[Civ. No. 39089. Second Dist., Div. Five. Apr. 28, 1972.]

MARY GAYLE et al., Petitioners and Respondents, v.
ROBERT L. HAMM, as County Clerk, etc., Defendant and Appellant.
COUNTY OF VENTURA, Real Party in Interest and Appellant.

## COUNSEL

Edwin M. Osborne, County Counsel, and James T. Ahern, Assistant County Counsel, for Defendant and Appellant and for Real Party in Interest and Appellant.

Steven J. Stone, in pro. per., Burke, Williams & Sorensen, Royal M. Sorensen, Edward L. Lascher, Siegfried Hesse, Romney, Stone, Smith & Drescher and Steven J. Stone for Plaintiffs and Respondents.

## OPINION

**AISO, J.**—Petitioners Mary Gayle and Steven J. Stone (proponents) filed an initiative petition with defendant[1] Robert L. Hamm, County Clerk of the County of Ventura (county clerk) pursuant to Elections Code section 3706 on April 12, 1971. Upon advice from the county counsel that the initiative measure (ordinance), even if carried at the polls, would be invalid, the county clerk refused to examine the petition for requisite signatures as prescribed by Elections Code section 3707. Proponents then filed a petition for a writ of mandate in the superior court, on June 23, 1971, to compel the county clerk to examine and process the petition in accordance with said section 3707. Defendant county clerk and the County of Ventura (county) interposed demurrers to the petition on the grounds that it failed to state a cause of action and that there was a defect of parties defendant in failing to name the county as a party.[2]

Following a hearing, at which arguments of counsel were heard, the superior court ordered the issuance of a peremptory writ of mandate commanding the county clerk to: (a) count the number of signatures on the initiative petition; (b) ascertain from the records of registration whether said initiative petition is signed by the requisite number of voters; and (c) if he finds the signatures to the petition to be sufficient in number, to submit the petition to the board of supervisors of the county at their next regular meeting, together with a certificate of the county clerk showing the results of his examination.

Defendants county and county clerk appeal from the foregoing order. They also purport to appeal from certain orders discussed in footnote 3 below.

The substantive issue[3] presented is a narrow one: Where, because

---

[1] We use "defendant" or "defendants" in lieu of "respondent" or "real party in interest" for sake of clarity.

[2] The defendants also filed a return to the alternative writ by way of an answer and amended answer. Proponents filed a replication to the answer, which replication was also deemed to be responsive to the amended answer. However, we may disregard these pleadings for the purposes of this appeal for the reasons which we set forth in footnote 3 below.

[3] Although defendants county and county clerk have asserted a number of procedural irregularities, their brief indicates that they do not wish these contentions to stand in the way of this court's determination of the substantive issue presented. We proceed to consider the substantive issue (cf. *California Highway Com.* v. *Riley* (1923) 192 Cal. 97, 102 [218 P. 579]), because we find these claims of procedural error to either lack merit or the errors, if any, to be nonprejudicial to said defendants. Their attempted appeal from the order denying their motions to reconsider the ruling on demurrer and to recall and quash the peremptory writ of mandate and the order striking the court's previous order (dated July 29, 1971) directing findings of fact and conclusions of law to be prepared are dismissed. These orders were made on

of the county counsel's advice that the initiative measure (ordinance), even if carried, would be invalid, a county clerk refuses to examine an initiative petition to ascertain if it has the requisite number of qualified signatures, is the court under a *mandatory duty* to determine the validity of the proposed ordinance before issuing a peremptory writ of mandamus to the county clerk to examine the petition and to process the same in accordance with the provisions of Elections Code section 3707?[4]

We have concluded that under the circumstances of this case, there was

August 16, 1971, and entered August 20, 1971, after defendants had filed their notice of appeal on July 28, 1971, from the order granting the peremptory writ. Consequently, these orders were not appealable. (*Davidson* v. *Davidson* (1963) 217 Cal.App.2d 576, 579 [31 Cal.Rptr. 815]; *Christensen* v. *Lucerne Holding Co.* (1933) 134 Cal.App. 215, 216 [25 P.2d 261].) Although an amended answer to the petition and a replication in response thereto are on file, together with a stipulation that "the only thing presently at issue will be the demurrer and any hearing on the merits will be continued pending disposition of the demurrer," our examination of those pleadings discloses no bar to a consideration of the merits. The amended answer raises only a question of law or alleges immaterial statements, which do not affect the substantial rights of the parties to this dispute. Consequently the amended answer may be treated as part of the demurrer. (Code Civ. Proc., § 1094; *Town of Hayward* v. *Pimental* (1895) 107 Cal. 386, 390-391 [40 P. 545]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 164, pp. 3929-3930; Cal. Civil Writs (Cont. Ed.Bar 1970) p. 407.) The questions at issue were all matters of law; consequently, no written findings were necessary. (See, e.g., *Martin* v. *Smith* (1960) 184 Cal. App.2d 571, 578-579 [7 Cal.Rptr. 725].) In any event, the court heard argument on all the points urged by the county counsel as bases for urging the invalidity of the initiative measure. Defendants state in their brief: "Since, in [defendants'] view, the Order [granting the peremptory writ] must be reversed, the demurrer sustained, and the petition dismissed, the many other procedural irregularities of the trial court need not be considered by this court."

[4]Elections Code section 3707: "Within 30 days from the date of filing the petition, the county clerk shall examine the petition, and from the records of registration ascertain whether or not the petition is signed by the requisite number of voters. He shall attach to the petition his certificate showing the result of his examination. If the county clerk's certificate shows the petition to be insufficient, a supplemental petition, in form a duplicate of the original petition, bearing additional signatures, may be filed within 10 days of the date of the certificate of insufficiency. The county clerk shall, within 10 days after the supplemental petition is filed, examine it, and if his certificate shows that the signatures to the petition are still insufficient, no action shall be taken on the petition. The petition shall remain on file as a public record for a period of two years from the date of the final certificate, and the failure to secure sufficient signatures shall not prejudice the filing later of an entirely new petition to the same effect. If the petition together with supplementary petitions, if any, is found to be sufficient, the county clerk shall submit it to the board of supervisors at the next regular meeting of the board."

Elections Code section 3711 provides: "If the initiative petition is signed by voters not less in number than 10 percent of the entire vote cast in the county for all candidates for Governor at the last gubernatorial election, and the ordinance petitioned for is not required to be, or for any reason is not, submitted to the voters at a special election, and is not passed without change by the board of supervisors, the ordinance, without alteration, shall be submitted by the board to the voters at the next general election."

no such mandatory duty upon the court, although we recognize that the court in the exercise of its equitable discretion may proceed to make such determination in appropriate instances.

The proposed initiative ordinance in question reads as follows:

"SECTION 1. The County of Ventura shall not own, lease, maintain, nor operate any airport within the boundaries of any incorporated city unless the question of the use of the land proposed to be used as an airport has been submitted to the voters of the City and a majority of those voting on such question have voted in favor thereof. For the purposes of this Section airport shall include any air strip, landing strip, pad, or other facility for the landing or taking off of fixed wing or other aircraft, including helicopters.

"SECTION 2. The County of Ventura shall not own, lease, maintain, nor operate any airport unless the land over which approach and departure zones are established, by the appropriate regularitory [sic] authority, for a distance of not less than 5,000 yards from the boundaries of the airport is zoned and used for other than residential purposes. For the purpose of this Section airport shall include air strip, landing strip, pad or other facility for the landing or taking off of fixed wing aircraft or other aircraft excepting helicopters.

"SECTION 3. If any section, subsection, sentence, clause, phrase or portion of this ordinance is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this ordinance. The people hereby declare that they would have adopted this ordinance and each section, subsection, sentence, clause, phrase, or portion thereof, irrespective of the fact that any section, subsection, sentence, clause, phrase or portion be declared invalid or unconstitutional.

"SECTION 4. This ordinance shall take effect ten days after the date of its adoption."

The court below refused to determine the validity of the proposed ordinance as requested by defendants. Defendants argue that it placed its refusal to do so upon the ground that it lacked jurisdiction to take up the matter. Our perusal of the record does not so indicate. Rather, it reflects that it was of the view that it was not compelled to do so in this case upon the authority of *Farley* v. *Healey* (1967) 67 Cal.2d 325, 327 [62 Cal.Rptr. 26, 431 P.2d 650]. The court in *Farley* stated: "It is not his [acting registrar of voters under the Charter of the City and County of San Francisco] function to determine whether a proposed initiative will be valid if enacted

or whether a proposed declaration of policy is one to which the initiative may apply. These questions may involve difficult legal issues that only a court can determine. The right to propose initiative measures cannot properly be impeded by a decision of a ministerial officer, even if supported by the advice of the city attorney, that the subject is not appropriate for submission to the voters. Given compliance with the formal requirements for submitting an initiative, the registrar must place it on the ballot unless he is directed to do otherwise by a court *on a compelling showing that a proper case has been established for interfering with the initiative power. (McFadden v. Jordan* (1948) 32 Cal.2d 330, 332 [196 P.2d 787].)" (Italics added.) In *McFadden,* the court granted a writ of mandamus directing the Secretary of State to refrain from certifying an initiative measure to registrars of voters and county clerks because upon examination of the proposed measure, the court found *"it clear beyond question"* that the proposed initiative measure was unconstitutional.[5]

We learn from *Farley* and *McFadden* that: (1) the county clerk's duty in processing the petition for the requisite number of signatures is ministerial, and (2) the court will not interfere with the reserved right of the people to propose legislation absent a "compelling showing," i.e., a showing that it is "clear beyond question" that the proposed ordinance would be invalid even if enacted. In elucidation of the meaning of "a compelling showing," the court in *Farley* stated that such a showing had been made in *Riedman v. Brison* (1933) 217 Cal. 383 [18 P.2d 947] and *Mervynne v. Acker* (1961) 189 Cal.App.2d 558 [11 Cal.Rptr. 340]. An examination of those two cases shows that determinations of the focal issues necessary to a disposition of those cases had been made previously upon more than one occasion by the Supreme Court. Consequently, the courts considering the petitions for mandamus were able to make the determination that the proposed measure was clearly invalid beyond question, readily and with confidence. That is not the situation which was posed to the superior court in this case.

To sustain defendants' position that the proposed ordinance is invalid, the county counsel advances the following contentions: (1) The proposed initiative ordinance would violate the equal protection clause of the Fourteenth Amendment. (2) It conflicts with laws governing initiative and referendum, because: (a) it binds the legislative power of future boards of supervisors; (b) the location of a county airport is a county and not a municipal

---

[5]Cf. *Irvine v. Gibson* (1941) 19 Cal.2d 14, 15 [118 P.2d 812], where the court stated that in a mandamus proceeding the "right to the writ must be clear and certain." In one aspect, the county counsel in effect is asking the court to grant a writ directing the county clerk to refrain from processing the petition upon the ground that the proposed ordinance is invalid.

matter; and (c) it invades the area of matters administrative rather than legislative. (3) The power vested in the county to own and operate airports has been expressly delegated to and can be exercised only by the board of supervisors. (4) The proposed initiative measure would impair the county's power of eminent domain. (5) It conflicts with the general law exempting the county from municipal building and zoning regulations. (6) It would impair the county's contract obligations. (7) Section 3 of the proposed initiative ordinance (severability provision) is inoperative. We have examined these points raised by the defendants and the authorities they have cited in support. Defendants have cited no binding authority, and our own research to date has disclosed none, of the same dispositive quality as the Supreme Court cases cited in *Riedman* and in *Mervynne* which would afford us a simple and speedy determination of the validity issue. Difficult questions of law have been raised at a time when the role of the initiative power must be reassessed in the light of contemporary discontent with representative government, which is claimed to no longer represent the average citizen. The ecological problem of noise pollution created by airports and its hazard to the health of the populace raise new factors of which a court is compelled to take judicial notice.

■ Even grave doubts as to the constitutionality of an initiative measure do not compel a court to determine its validity prior to its submission to the electorate. (*Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 535 [50 Cal.Rptr. 881, 413 P.2d 825], affd. 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627]; *Brown* v. *Jordan* (1938) 12 Cal.2d 75, 84 [82 P.2d 450].)

■ We do not find the cases handed down subsequent to *Farley* as supporting defendants' contention that the "law still is that determining the validity of a contested initiative ordinance is an essential ingredient of mandamus" prior to the processing of the initiative measure for its formal requisites. They cite: *Kugler* v. *Yocum* (1968) 69 Cal.2d 371 [71 Cal. Rptr. 687, 445 P.2d 303]; *Dare* v. *Lakeport City Council* (1970) 12 Cal. App.3d 864 [91 Cal.Rptr. 124]; and *Campen* v. *Greiner* (1971) 15 Cal. App.3d 836 [93 Cal.Rptr. 525]. To begin with, these cases did not discuss the issue now before us. In none of these cases does it appear that a ministerial officer had refused to examine the petition for requisite signatures. As noted in *Farley*, cases are not authority for propositions not considered. (67 Cal.2d at p. 327.) The fact that the appellate court in *Kugler* considered the validity of the measure, instead of remanding the case to the trial court without such determination, does not support defendants' position. There, the trial court in the exercise of its discretionary powers went into the merits of the proposed initiative measure and determined that it would be valid if passed. Consequently, the appeal posture of the case was

such that an appellate court had to consider the merits to dispose of the appeal. Both the *Dare* and *Campen* cases involved initiative measures encroaching upon an area of the taxing power which has long been held to be an inappropriate subject of initiative petitions (Note: *The Scope of the Initiative and Referendum in California* (1966) 54 Cal.L.Rev. 1717, 1742-1743), hence they are not of assistance in the non-tax situation presented here.

In sum, except in a situation where the question of the invalidity of the proposed measure is patent, the court need not determine that issue if it is not ripe for adjudication prior to commanding the ministerial officer to check the petition for its formal requisites. ■ The issuance of a writ of mandamus is still basically a matter of discretion, except where entitlement or non-entitlement thereto is established as a matter of right. (See, e.g., *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal. Rptr. 809, 467 P.2d 537], app. dism., cert. den. 400 U.S. 807 [27 L.Ed.2d 37, 91 S.Ct. 65]; *Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 671 [56 Cal. Rptr. 265, 423 P.2d 193]; *Fawkes* v. *City of Burbank* (1922) 188 Cal. 399, 401-402 [205 P. 675].) In the exercise of its equitable discretion it may weigh the various factors pro and con as to whether the interests of justice require a determination of the validity of the initiative measure before the petition has been examined for its compliance with formal requirements. In favor of the defendants' position is the factor that the expense of processing the petition should be avoided if the measure proposed will be invalid even if passed by the electorate. On the other hand, the proponents have the right to know as soon as possible whether the formal requisites have been met. If the number of qualified signatures is lacking, they want to go out and get the requisite signatures via a supplemental petition. The judiciary has been and should be parsimonious about deciding questions until they are justiciable or "ripe" for adjudication. (See generally *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126]; *California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22-23 [61 Cal. Rptr. 618]; Borchard, Declaratory Judgments (2d ed. 1941) pp. 34-36.) It may be (and in the experience of this court there have been such instances) that it will become unnecessary to decide the question of validity if the initiative measure is defeated at the polls.

We have previously alluded to the reserved initiative power in the electorate (Cal. Const., art. IV, §§ 1 and 25) as an instance of "fundamental democracy" as opposed to "representative government" (see Comment, *Limitations on Initiative and Referendum* (1951) 3 Stan.L.Rev. 497). We take judicial notice of the fact that a large cross-section of the citizenry

entertains an opinion that the government is no longer representative of the people. It takes outlandish financial resources to mount a campaign for office, lobbyists play no small part in controlling the destiny of legislative measures, and in election years our elected representatives procrastinate taking action even on urgent measures. One counter-balance to this trend is to give vitality to the initiative power.

Even the court in *Mervynne, supra,* recognized: "The exercise of initiative and referendum is one of the most precious rights of our democratic process. Since under our theory of government all the power of government resides in the people, the power of initiative is commonly referred to as a 'reserve' power and it has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it. [Citations.]" (189 Cal.App.2d 558, 563-564.)

A premature interposition of the judiciary constitutes an unwarranted limitation upon this reserve power. To accept the position espoused by defendants in this case, namely, that the court must determine the validity of the initiative ordinance at the processing juncture represented by this case and the showing made by defendants would be tantamount, in our opinion, to requiring every proponent of an initiative measure to first seek the advisory opinion of the courts as to its validity before getting the measure to the electorate. In our view, the court should shortcut the normal initiative procedure only where the invalidity of the proposed measure is clear beyond a doubt.

The judgment (order) directing issuance of the peremptory writ of mandamus is affirmed. The attempted appeal from all other orders is dismissed. Petitioners shall recover their costs on appeal against the defendant County of Ventura.

Kaus, P. J., and Stephens, J., concurred.