[No. E001608. Fourth Dist., Div. Two. Sept. 6, 1985.]

LOUIS A. DEBOTTARI, Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF NORCO et al.,
Defendants and Respondents;
HOWARD HANZLIK, Real Party in Interest and Respondent.

1206

---

---

**COUNSEL**

Louis A. deBottari in pro. per., for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General,

and David W. Hamilton, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Maroney, Brandt & Holdaway and Barry Brandt for Defendants and Respondents.

Charles H. Carter and Marc Levine for Real Party in Interest and Respondent.

## OPINION

**RICKLES, J.**—Defendant Norco City Council (council) refused to submit a properly certified referendum petition to the voters on the ground that repeal of the challenged ordinances would result in a legally invalid zoning scheme. Plaintiff Louis A. deBottari, a resident and qualified voter of Norco, filed a petition for writ of mandate in the Superior Court of Riverside County to command the defendant either to repeal the ordinances or place the issue before the electors of Norco. The trial court entered judgment denying the petition for writ of mandate. Plaintiff filed a notice of appeal. The Attorney General appears as amicus curiae on behalf of plaintiff.

Considered together, the contentions of plaintiff and the Attorney General (hereinafter referred to jointly as plaintiff) are (1) that council had a mandatory duty either to repeal the ordinances or submit the issue to the voters, and (2) that council has failed to establish the "compelling showing" necessary to justify preelection judicial interference.

### FACTS

Howard Hanzlik (real party in interest) applied for a general plan amendment and zone change for certain property located in the City of Norco. The general plan amendment was requested for a parcel of property approximately 30 to 40 acres in size, and sought to change the land use designation from residential/agricultural (0-2 units per acre) to residential-low density (3-4 units per acre).

Mr. Hanzlik also requested that the same property be rezoned from "R-1-18" to "R-1-10." The object of the general plan amendment and zone change was to allow construction of single family homes on 10,000 square-foot lots (approximately 4 per acre); the existing zoning for the property required a minimum of 18,000 square feet for each lot (approximately 2 units per acre).

On June 20, 1984, the council approved the general plan amendment requested by Mr. Hanzlik. Two weeks later, on July 5, 1984, the council adopted ordinance Nos. 517 and 518 which approved the requested zone changes.

Following the council's July 5 action, plaintiff and other qualified voters and residents of Norco prepared and circulated petitions protesting the enactment of the two rezoning ordinances and calling for their repeal or, alternatively, a referendum. The petitions were submitted in a timely fashion to the city clerk (see Elec. Code, § 4051), who examined the petitions and certified they were in proper form and contained the requisite number of signatures of registered Norco voters. (See Elec. Code, §§ 4051, 4053-4054.)

The referendum petitions were then presented to the council pursuant to Elections Code section 4055, which provides that the legislative body of a city must either repeal the challenged ordinances or submit the referendum to the voters. After obtaining advice from the city attorney, the council refused to do either on the grounds that repeal of the ordinances would result in the subject property being zoned inconsistently with the amended general plan, contrary to Government Code section 65860, subdivision (a).

Plaintiff's petition for a writ of mandate to compel the council either to repeal the ordinance or submit the issue to the voters was denied and this appeal followed.

## DISCUSSION

### I

*Preelection Nonjudicial Review*

■ Plaintiff first contends that the council violated its mandatory duty under Elections Code section 4055 by failing either to repeal the zoning amendment at issue or submit the referendum to the voters. This section in pertinent part provides: "If the legislative body does not entirely repeal the ordinance against which the petition is filed, the legislative body shall submit the ordinance to the voters. . . ."

There appears to be no case which has addressed the question whether a city council retains discretion under Elections Code section 4055 to refuse to place on the ballot a duly certified referendum petition. However, many courts have construed similar election statutes to hold that a city clerk (*Duran* v. *Cassidy* (1972) 28 Cal.App.3d 574 [104 Cal.Rptr. 793]; Elec. Code,

§ 4008); a city registrar of voters (*Farley* v. *Healey* (1967) 67 Cal.2d 325 [62 Cal.Rptr. 26, 431 P.2d 650] [charter of the City and County of San Francisco]; Elec. Code, § 180); a county clerk (*Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250 [101 Cal.Rptr. 628], Elec. Code, § 3707); a county board of supervisors (*Citizens Against a New Jail* v. *Board of Supervisors* (1976) 63 Cal.App.3d 559 [134 Cal.Rptr. 36]; Elec. Code, § 3711); and the Secretary of State of California (*Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658 [194 Cal.Rptr. 781, 669 P.2d 17]; Elec. Code, § 3523); all have a mandatory duty to process and submit initiative and referendum measures. (See also *Yost* v. *Thomas* (1984) 36 Cal.3d 561, 564, fn. 2 [205 Cal.Rptr. 801, 685 P.2d 1152].)

We perceive no basis for distinguishing the case at bar from the foregoing authorities, and defendant has not suggested any. Hence we conclude the council had a mandatory duty either to repeal the challenged ordinances or to submit the ordinance to referendum unless "directed to do otherwise by a court on a compelling showing that a proper case has been established for interfering with the [referendum] power." (*Farley* v. *Healey, supra,* 67 Cal.2d at p. 327.) Having determined that the respondent city registrar exceeded his authority in withholding an initiative measure from the voters, the *Farley* court "deem[ed] it appropriate to determine whether the charter enables the electorate to adopt it." (*Id.,* at p. 327.) Here, as in *Farley,* we "deem it appropriate" to determine whether respondent had made a "compelling showing that a proper case has been established for [judicial] interfer[ence] . . . ." (*Ibid.*) That is the question to which we now turn.

II

*Preelection Judicial Review*

We recognize that "it is usually more appropriate to review constitutional and other challenges to ballot propositions or initiative measures after an election rather than to disrupt the electoral process by preventing the exercise of the people's franchise, in the absence of some clear showing of invalidity." (*Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 4 [181 Cal.Rptr. 100, 641 P.2d 200].) However, the courts have recognized two exceptions to the general rule limiting judicial review of ballot measures to postelection proceedings. The first is where the electorate lacks the "*power* to adopt the proposal in the first instance. . . ." (*Id.,* at p. 6; italics supplied.) "Thus, for example, election officials have been ordered not to place initiative and referendum proposals on the ballot on the ground that the electorate did not have the power to enact them since they were not legislative in character [citations], the subject matter was not a municipal affair [citations], or the

proposal amounted to a revision of the Constitution rather than an amendment thereto." (*Id.*)

The second exception to the general rule proscribing preelection judicial review, and the one invoked by the council in the present case, is where the substantive provisions of the proposed measure are *legally invalid.*

"[E]ven if a proposed measure is within the scope of the initiative power, courts retain equitable discretion to examine the measure before the election upon a compelling showing that the substantive provisions of the initiative are clearly invalid. (See *Harnett* v. *County of Sacramento* (1925) 195 Cal. 676, 683 . . .; *Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250, 255 . . .; Note, *The Scope of the Initiative and Referendum in California* (1966) 54 Cal.L.Rev. 1717, 1725-1729.)" (*American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 696, fn. 11 [206 Cal.Rptr. 89, 686 P.2d 609].) We shall therefore proceed to consider the council's claim that the referendum would be "clearly invalid" if enacted by the voters.

### III

### *Validity of the Referendum*

■ State law prohibits enactment of a zoning ordinance that is not consistent with the general plan. (Gov. Code, § 65860.) Were the voters to repeal the zoning amendment at issue here, the result unquestionably would be a zoning ordinance inconsistent with the amended general plan. Hence the council contends that it has made the requisite "compelling showing that the substantive provisions of the [referendum] are clearly invalid." (*American Federation of Labor* v. *Eu, supra,* 36 Cal.3d at p. 696, fn. 11.) We agree.[1]

State law requires that the legislative body of every county and city "adopt a comprehensive, long-term general plan for the physical development of the county or city, and of any land outside its boundaries which in the planning agency's judgment bears relation to its planning." (Gov. Code, § 65300.) Proposed subdivisions, together with the provisions for their design and improvements must be "consistent with the general plan." (Gov. Code, § 66473.5.) County and city zoning ordinances must be "consistent with the general plan," as well. (Gov. Code, § 65860, subd. (a).)

The impact of the legislation (Stats. 1971, ch. 1446, pp. 2852, 2858) which imposed the requirement that subdivisions and zoning ordinances be

---

[1] In view of our holding that repeal of the ordinances would result in a "clearly invalid" zoning scheme, we need not address real party's alternative argument that repeal would be invalid as arbitrary and discriminatory.

consistent with the general plan has been widely noted. As this court, in *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 532 [160 Cal.Rptr. 907], stated: "In 1971 the Legislature enacted [Gov. Code, §§ 66473.5, 65860] which transformed the general plan from just an 'interesting study' to the basic land use charter governing the direction of future land use in the local jurisdiction. . . . *As a result,* general plans now embody fundamental land use decisions that guide the future growth and development of cities and counties. The adoption or amendment of general plans perforce have a potential for resulting in ultimate physical changes in the environment . . . ." (Italics supplied.)

In *Bownds* v. *City of Glendale* (1980) 113 Cal.App.3d 875, 880 [170 Cal.Rptr. 342], the court noted the "combined effect" of the State Planning and Zoning Law, "which is to require that cities and counties adopt a general plan for the future development, configuration and character of the city or county and require that future land use decisions be made in harmony with the general plan." (See also *City of Los Angeles* v. *State of California* (1982) 138 Cal.App.3d 526, 533 [187 Cal.Rptr. 893].) One commentator has gone so far as to conclude: "The focus of the legislative scheme in California's modern statutes . . . seems to be the requirement that the exercise of the police power in the zoning and land-use permit area be *consistent* with the general plan." (Note, *General Plan* (1974) 26 Hastings L.J. 614, 622; italics supplied.)

The general plan is tremendously significant in shaping future development because land use decisions must be consistent therewith. "The immutable effect of the [general] plan with respect to individual landowners and the community in general is a result of the new requirement that city or county zoning ordinances be consistent with the general plan." (Note, *General Plan, supra,* at p. 627.) The consistency requirement has elevated the general plan from an "exhortation" to a "commandment." (*Ibid.*; see also Comment, *"Zoning Shall Be Consistent with the General Plan"—A Help or a Hindrance to Planning?"* (1973) 10 San Diego L.Rev. 901.)

In section 65860, subdivision (a), the Legislature mandated that all zoning shall be consistent with the general plan. In section 65860, subdivision (c), the Legislature added muscle to the provision by requiring that any ordinance which becomes *inconsistent* with a general plan *must* be brought into conformity. Subdivision (c) provides: "In the event that a zoning ordinance becomes inconsistent with the general plan by reason of amendment to such a plan, or to any element of such a plan, such zoning ordinance shall be amended within a reasonable time so that it is consistent with the general plan as amended." To further ensure consistency in land use decisions, the Legislature provided in section 65860, subdivision (b),

that "[a]ny resident or property owner within a city or a county, as the case may be, may bring an action in the superior court to enforce compliance with the provisions of subdivision (a)." (See *City of Los Angeles* v. *State of California, supra,* 138 Cal.App.3d at p. 531.)

A zoning ordinance inconsistent with the general plan at the time of its enactment is "invalid when passed." (*Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698, 704 [179 Cal.Rptr. 261].)

In view of the foregoing, we conclude that the invalidity of the proposed referendum has been clearly and compellingly demonstrated. Repeal of the zoning ordinance in question would result in the subject property being zoned for the low density residential use while the amended plan calls for a higher residential density. Notwithstanding this fact, plaintiff urges that the voters should be permitted to enact an inconsistent zoning ordinance because section 65860, subdivision (c), provides for a "reasonable time" within which an inconsistent zoning ordinance may be brought into conformity with an amended general plan. Thus, plaintiff points out, even if the referendum were approved the council would have a "reasonable time" within which to rectify the inconsistency.

■ Plaintiff readily concedes some remedial action by the council would then be required. Plaintiff suggests that the council would have three options: (1) reenact the zoning amendment that the voters had overturned; (2) enact some alternative zoning scheme which is consistent with the general plan; and (3) amend the amended general plan to conform to the zoning ordinance preferred by the voters.

Unfortunately, all of the options offered by plaintiff beg the question of whether the voters, *ab initio,* have the right to enact an invalid zoning ordinance. Clearly, section 65860, subdivision (c), was enacted to provide the legislative body with a "reasonable time" to bring zoning into *conformity* with an amended general plan. It would clearly distort the purpose of that provision were we to construe it as affirmatively sanctioning the enactment of an *inconsistent* zoning ordinance.

An even greater distortion of legislation would result were we to approve the referendum on the ground that the council could subsequently amend the *general plan* to conform with the zoning approved by the voters. As is often noted, the general plan serves as the "constitution for all future developments within the City." (*O'Loane* v. *O'Rourke* (1965) 231 Cal.App.2d 774, 782 [42 Cal.Rptr. 283].) Unrestricted amendments of the general plan to conform to zoning changes would destroy the general plan as a tool for the comprehensive development of the community as a whole. (See Com-

ment, *"Zoning Shall Be Consistent with the General Plan"—A Help or a Hindrance to Planning?, supra,* at p. 906; Williams, Cal. Zoning Practice (Cont.Ed.Bar 1984 Supp.) § 2.29, p. 21. Indeed it was precisely to control such evasions, that the Legislature limited the number of amendments to the general plan which may be passed during any calendar year. (Gov. Code, § 65361; see Williams, Cal. Zoning Practice, *supra,* at p. 21.)

■ In sum, we conclude that the referendum, if successful, would enact a clearly invalid zoning ordinance. Judicial deference to the electoral process does not compel judicial apathy towards patently invalid legislative acts. Nor are we persuaded that a zoning ordinance inconsistent with the general plan constitutes little more than a mere technical infirmity. On the contrary, the requirement of consistency is the linchpin of California's land use and development laws; it is the principle which infused the concept of planned growth with the force of law. We are not persuaded that this principle must now be sacrificed on the altar of an invalid referendum.

DISPOSITION

The judgment is affirmed.

Morris, P. J., and Kaufman, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 19, 1985. Bird, C. J., was of the opinion that the petition should be granted.