[No. F018332. Fifth Dist. Feb. 11, 1993.]

SAVE STANISLAUS AREA FARM ECONOMY et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF THE COUNTY OF STANISLAUS et al., Defendants and Respondents;
FAMILY FARM ALLIANCE et al., Real Parties in Interest and Appellants.

**COUNSEL**

Neumiller & Beardslee, Steven A. Herum, Thomas H. Terpstra and George A. Petrulakis for Real Parties in Interest and Appellants.

Brunn & Flynn, Charles K. Brunn, Gerald Brunn, Shute, Mihaly & Weinberger, Rachel B. Hooper, Christy H. Taylor and Richard S. Taylor for Plaintiffs and Respondents.

Michael H. Krausnick, County Counsel, and E. Vernon Seeley, Assistant County Counsel, for Defendants and Respondents.

**OPINION**

**VARTABEDIAN, J.**—This is an appeal from the trial court's judgment directing the Stanislaus County Board of Supervisors (Board) to place on the 1992 general election ballot a slow-growth ordinance known as Measure F. Respondents on appeal, Save Stanislaus Area Farm Economy and certain named individuals (SAFE), filed a petition for writ of mandate in the trial court. The Board was respondent in that proceeding; Family Farm Alliance (FFA), appellant herein, was real party in interest below. After Measure F was ordered onto the ballot, it was defeated by a wide margin. Some of the issues raised on appeal are of great public importance, are almost certain of repetition, and are of a nature that prevents timely appellate review. Accordingly, we decide this matter on the merits, at least in part, and affirm the judgment.

### FACTS AND PROCEEDINGS

On June 15, 1992, the Stanislaus County Clerk-Recorder certified to the Board that SAFE had collected sufficient signatures to qualify an initiative measure for the November 3, 1992, general election ballot.[1] The initiative was entitled The Save Stanislaus Area Farm Economy Initiative (initiative).

---

[1] California Constitution, article II, section 11, provides, "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide. This section does not affect a city having a charter."

The initiative was lengthy, and we need only describe it by overview. ■ ■■ It sought to amend the general plan of Stanislaus County by readopting the current land-use plan for certain agricultural land and by permitting the designation of that land to be changed only upon certain conditions, such as annexation by a city or by vote of the electorate.[2] (The purported effect of readoption of particular plan designation is that any subsequent amendment of those designations must be by initiative as well. (See *Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531, 540, fn. 8 [277 Cal.Rptr. 1, 802 P.2d 317].)

The Board referred the initiative to county staff for review. Staff reported many problems with the initiative, including internal inconsistencies, conflicts with other parts of the general plan, conflicts with state laws governing general plans, and conflicts with state laws governing local initiatives. On July 21, 1992, the Board voted to exclude the initiative from the November ballot.

On July 24, 1992, SAFE filed its petition for writ of mandate, seeking to require the Board to place the initiative on the ballot. SAFE contended the Board had a ministerial duty to place the duly certified initiative on the ballot. The Board demurred on the basis the petition did not state a cause of action, and answered the petition with the contention that the initiative was illegal.

After extensive prehearing briefing, the court held a consolidated hearing on the demurrer and the merits of the mandate petition on August 5, 1992. In

---

[2]Local governments are required to adopt and maintain a general plan. The plan must address the following seven general subjects, referred to as "elements": land use, traffic circulation, housing, conservation, open space, noise, and seismic safety. (Gov. Code, § 65302.) "Each element must be addressed to the extent that the subject matter of the element exists in the planning area. The degree of specificity and the level of detail of the discussion must reflect local circumstances. [Citation.] In addition, the general plan and its elements must comprise an integrated, internally consistent and compatible statement of policies for the adopting agency. [Citations.]" (Williams, Cal. Zoning Practice (Cont.Ed.Bar 1992 Update) § 2.21, pp. 17-18.)

Legislative amendments to the state general plan laws in 1971 and 1974 "had the effect of transforming the general plan from what one court termed 'just an interesting study' into the basic land-use charter governing the direction of future land use in the local jurisdiction." (Williams, *op. cit. supra*, § 2.21, p. 19.)

Judicial review of general plans is rather limited. Adoption of a general plan and amendment of the plan are legislative acts, subject to review by petition for writ of mandate. (Gov. Code, § 65301.5) "Judicial review is limited to an examination of the agency's proceedings to determine whether its action was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices required by law." (Williams, *op. cit. supra*, § 2.21, p. 23; see also *Kings County Farm Bureau* v. *City of Hanford* (1990) 221 Cal.App.3d 692, 742 [270 Cal.Rptr. 650].)

a written decision filed August 10, 1992, the court found the Board did not have a ministerial duty to place the initiative on the ballot, but that review by petition for writ of mandate was proper to determine whether the Board was substantively correct in deciding the initiative was illegal. The court found the appropriate standard for review by the Board and by the court was whether there had been a compelling showing that the initiative was clearly invalid as a matter of law. The court found that such a showing had not been made and ordered the Board to place the initiative on the ballot.

FFA filed its notice of appeal on August 18, 1992. Although the Board did not appeal, it has filed briefs "in support of" FFA's appeal. FFA sought from this court a stay of the writ. We denied relief.

The initiative was defeated by a substantial majority on November 3, 1992.

### DISCUSSION

#### *Mootness*

"The traditional view has been that neither a moot action nor a moot appeal will be decided merely because of the public importance of the question presented. [Citations] [¶] The dearth of recent cases supporting this supposedly basic principle, and the profusion of cases in which moot appeals have been decided in the public interest, makes it clear that mootness is not really a bar to production of a much-needed advisory opinion in writ proceedings [citations] and appeals." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 526, pp. 509-510.)

Thus in *Mann* v. *Superior Court* (1986) 181 Cal.App.3d 372 [226 Cal.Rptr. 263], Sandoval had filed a declaration of candidacy in an election for a local school board. Less than 88 days before the election, she announced her withdrawal from the race. Education Code section 5012 provides that any such withdrawal will only be effective to remove the candidate's name from the ballot if the withdrawal occurs at least 88 days before the election. A registered voter then petitioned for writ of mandate to require Mann, the registrar of voters, to remove Sandoval's name from the ballot. The lower court issued a peremptory writ directing such removal on October 23, 1985. Mann filed a petition in the appellate court on October 28, seeking a stay of the lower court's writ. The stay was denied, Mann removed Sandoval's name from the ballot, and the election occurred as scheduled on November 5.

In its opinion, filed in May of the following year, the Court of Appeal determined that removal of Sandoval's name from the ballot was impermissible. The court decided the merits of the case, but declined to issue a writ:

"The election mooted the dispute between Sandoval and Mann. We have concluded, however, that respondent court's writ was issued in error and that public interest in proper conduct of elections and the probability that the issue will arise again warrant a decision on the merits of the issue presented." (*Mann* v. *Superior Court, supra,* 181 Cal.App.3d at p. 374.) "But because the election has been held, it would serve no purpose to order respondent court to vacate its writ. For this reason only, the petition for writ of mandate or prohibition is denied." (*Id.* at p. 376; see also *People* v. *West Coast Shows* (1970) 10 Cal.App.3d 462 [89 Cal.Rptr. 290] [after full discussion of constitutional issues arising from Attorney General's investigation of the carnival industry, court dismissed appeal as moot].)

In *Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698 [179 Cal.Rptr. 261], this court decided an appeal that was moot. In that case, Kern County rezoned a property from agricultural to residential. The change was consistent with the county general plan's land-use element, but was inconsistent with the open-space/conservation element of the plan. The plan contained a provision that the land-use element would take precedence in case of such a conflict. Sierra Club sued for declaratory relief and a writ of mandate, claiming the precedence clause violated statutory requirements for general plans. While the appeal was pending, Kern County adopted a new general plan that did not contain a precedence clause. Further, under the revised general plan, the new zoning designation was consistent with the open-space element.

"The courts of this state have held that where a disputed statute, order or ordinance is repealed before an appeal is concluded the matter is moot." (*Sierra Club* v. *Board of Supervisors, supra,* 126 Cal.App.3d at p. 704.) "Although the issue is moot as to the specific ordinance and as to Kern County, we should nevertheless adjudicate the issue if it is one of broad public interest that is likely to recur. [Citation.] We were informed during oral argument that there are approximately 470 local jurisdictions that have the obligation to adopt local plans." (*Id.* at p. 708.) For the guidance of those other localities, the court "h[e]ld that the precedence clause under consideration is void as not permitted under" state law. (*Ibid.*)

■ Application of the public-interest/likelihood-of-repetition exception to the mootness doctrine is discretionary. In the present case, the primary issue is whether the Board illegally usurped a judicial function in refusing to place the initiative on the ballot. Such action by local government could be timed in such a way as to render the government's conduct unreviewable; and, indeed, if the trial court here had failed to order the initiative onto the

ballot in the present case, the time sequence may well have prevented relief from the Board's action. (See *Mann* v. *Superior Court, supra,* 181 Cal.App.3d at p. 374.) Since initiative and referendum matters frequently follow in response to unpopular action or inaction by the local government, the potential for misuse of power by a governmental body strongly influences our exercise of discretion to review this case on the merits.

### The Duty of the Board of Supervisors

■ FFA and the Board contend the Board had the power to review the initiative and to decide its validity and then to determine whether to place the matter on the ballot. They claim (1) all local initiatives are subject to "legislative review" before they are placed on the ballot; (2) as a result of the legislative review, the Board properly determined that the initiative did not propose an "ordinance" in accordance with Elections Code section 3711 and could not be placed on the ballot; and (3) as a result of the legislative review, the initiative was substantively invalid in several distinct ways and was not entitled to a place on the ballot.

FFA and the Board fail to cite a single authority which stands for the proposition that local governments are empowered to exercise discretion in deciding whether to place a duly certified initiative on the ballot. Such a contention is contrary to established case law. As courts have stated repeatedly and clearly, local governments have the purely ministerial duty to place duly certified initiatives on the ballot. (See, e.g., *Citizens for Responsible Behavior* v. *Superior Court* (1991) 1 Cal.App.4th 1013, 1021 [2 Cal.Rptr.2d 648].)

The courts have uniformly condemned local governments when these legislative bodies have refused to place duly qualified initiatives on the ballot. (See *Farley* v. *Healey* (1967) 67 Cal.2d 325, 327 [62 Cal.Rptr. 26, 431 P.2d 650]; *McFadden* v. *Jordan* (1948) 32 Cal.2d 330, 332 [196 P.2d 787]; *Citizens for Responsible Behavior* v. *Superior Court, supra,* 1 Cal.App.4th at p. 1021; *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1209 [217 Cal.Rptr. 790]; *Citizens Against a New Jail* v. *Board of Supervisors* (1976) 63 Cal.App.3d 559, 561 [134 Cal.Rptr. 36]; *Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250 [101 Cal.Rptr. 628].) "Given compliance with the formal requirements for submitting an initiative, the registrar must place it on the ballot unless he is directed to do otherwise by a court on a compelling showing that a proper case has been established for interfering with the initiative power." (*Farley* v. *Healey, supra,* 67 Cal.2d at p. 327.)

As appellants' counsel reluctantly conceded at oral argument, the primary authority on which appellants rely states the following:

"Initially, we discuss the general standards under which an initiative measure, otherwise qualified, may be refused a place on the ballot. [¶] In *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204 . . . we recognized that once an initiative measure has qualified for the ballot, the responsible entity or official has a mandatory duty to place it on the ballot. (See Elec. Code, §§ 4010-4011; 4055.) However, if the entity or official refuses to do so, this refusal—improper as it is—may be retroactively validated by a judicial declaration that the measure should not be submitted to the voters. In *Farley* v. *Healey* (1967) 67 Cal.2d 325, 327 . . . , the Supreme Court confirmed the power of the courts to determine the invalidity of a measure and to direct the appropriate official not to place it on the ballot. As *deBottari* recognized, even if the local entity usurps the judicial power in this respect, it remains appropriate for the courts to determine whether the result was correct." (*Citizens for Responsible Behavior* v. *Superior Court, supra,* 1 Cal.App.4th at p. 1021, fn. omitted.)

FFA and the Board assert that because courts in such cases in fact have gone forward with an analysis of the initiatives after condemning the local government's actions, there is now a judicial recognition that legislative review is permissible, and judicial review is merely used to determine whether the local government is right or wrong.

Not so. The law is clear: A local government is not empowered to refuse to place a duly certified initiative on the ballot.

What should a local government do if it believes an initiative measure is unlawful and should not be presented to the voters? A governmental body, or any person or entity with standing, may file a petition for writ of mandate, seeking a court order removing the initiative measure from the ballot. (See *Farley* v. *Healey, supra,* 67 Cal.2d at p. 327.) But such entity or person may not *unilaterally* decide to prevent a duly qualified initiative from being presented to the electorate.

The present case provides an excellent illustration of the difference. In the trial court and in this court, the Board has contended that the courts should defer to the Board's actions in making findings of fact supported by evidence in the legislative record. The Board has castigated SAFE for its failure to present to the trial court or to us the complete record of the hearing before the Board. However, the showing required of SAFE in this matter was extremely minimal—and indeed the facts it was required to show were

basically admitted by everyone involved. SAFE had to show that the county registrar had certified that the correct number of qualified signatures were submitted in support of the initiative and that the Board had refused to put the measure on the ballot. Upon such a showing, SAFE was entitled to a writ of mandate commanding the Board to place the initiative on the ballot. (*Gayle* v. *Hamm, supra*, 25 Cal.App.3d at pp. 253-254.)

In theory, after being ordered to put the initiative on the ballot, the local government could then file its writ petition seeking an adjudication that the initiative was invalid. (See, e.g., *Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 498 [247 Cal.Rptr. 362, 754 P.2d 708].) In practice, and in the interest of equity and judicial economy, courts have allowed local governments to assert such invalidity as a "defense" in the original writ proceeding. (See, e.g., *Gayle* v. *Hamm, supra*, 25 Cal.App.3d at p. 257.) But in doing so, neither courts nor litigants should lose sight of the fact that the burden of establishing this "defense" falls squarely on the entity or person asserting the initiative's invalidity. (*deBottari* v. *City Council, supra*, 171 Cal.App.3d at p. 1209.) The burden to show invalidity is substantial, as we will discuss below.

Thus, the Board had the burden of showing the initiative was invalid; it had the responsibility before the trial court to produce any factual information supporting its contention.

### *Judicial Review of the Initiative*

■ The trial court has discretion whether to entertain preelection review of a qualified initiative. (*Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 4 [181 Cal.Rptr. 100, 641 P.2d 200]; *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529 [50 Cal.Rptr. 881, 413 P.2d 825].) Accordingly, on appeal we review the trial court's decision for abuse of discretion. (See *Gayle* v. *Hamm, supra*, 25 Cal.App.3d at p. 257.)

■ What standard, then, is to govern the trial court's exercise of discretion in preelection review of a qualified initiative? The standard is one of great deference to the electorate's constitutional right to enact laws through the initiative process; a court will remove an initiative from the ballot only "on a compelling showing that a proper case has been established for interfering." (*Farley* v. *Healey, supra*, 67 Cal.2d at p. 327.) The standard is one that is cognizant of the injury to the public that would result from an erroneous determination to keep an initiative off the ballot; "[i]f doubts can reasonably be resolved in favor of the use of this [initiative] power, courts will preserve it." (*Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 563-564

[11 Cal.Rptr. 340].) "In our view, the court should shortcut the normal initiative procedure only where the invalidity of the proposed measure is clear beyond a doubt." (*Gayle v. Hamm, supra,* 25 Cal.App.3d at p. 258.)

FFA and the Board contend this judicial deference to the power of the electorate is only applicable, however, when the *substantive validity* of the initiative is challenged. If, instead, the question is one of fundamental "jurisdiction" of the proposed initiative, they contend the applicable standard requires no such deference. FFA and the Board rely on *American Federation of Labor v. Eu* (1984) 36 Cal.3d 687 [206 Cal.Rptr. 89, 686 P.2d 609] for this distinction.

The initiative at issue in *American Federation of Labor v. Eu, supra,* 36 Cal.3d 687 directed the Legislature to call upon Congress to convene a constitutional convention to propose a balanced budget amendment. (*Id.* at p. 691.) The court concluded the initiative did not propose a "statute," and accordingly it was beyond the initiative power retained by the electorate. The court concluded that such a determination is "properly justiciable before the election" (*id.* at pp. 696-697, fn. 11), whereas challenges to the substantive provisions of the initiative are merely within the courts' "retain[ed] equitable discretion to examine . . . before the election upon a compelling showing that the substantive provisions of the initiative are clearly invalid." (*Ibid.*)

We do not construe *American Federation of Labor v. Eu, supra,* 36 Cal.3d 687 as creating a dual standard for judicial review. Rather, the sole standard is that the opponent of a duly qualified initiative must make a "compelling showing" that the measure should be removed from the ballot. Whether fundamental jurisdiction or a less-fundamental conflict with state statutes is alleged to render an initiative invalid, a court retains discretion to "resolve doubtful cases in favor of submitting an initiative to the electorate." (*Citizens for Responsible Behavior v. Superior Court, supra,* 1 Cal.App.4th at pp. 1021-1022.) Thus while a trial court has the power to order an initiative removed from the ballot if the court is convinced during preelection review that the matter is invalid for any reason, the court also retains discretion to deny that relief if it entertains significant doubt about the invalidity of the measure.

In the present case, the trial court entertained doubts about the invalidity of the initiative—that is, it found FFA and the Board had not made ·a compelling showing of invalidity. The record amply supports the court's conclusion.

FFA and the Board assert they made a compelling showing that the proposed initiative was beyond the scope of the constitutional initiative power. They contend general plans simply may not be amended by initiative.

A substantial body of law holds that general plans may indeed be amended by initiative or referendum.[3] In *Yost* v. *Thomas* (1984) 36 Cal.3d 561, 570 [205 Cal.Rptr. 801, 685 P.2d 1152], the court wrote that "amendment of a general plan is thus a legislative act subject to referendum." That statement was reaffirmed in dicta in *Committee of Seven Thousand* v. *Superior Court*, *supra*, 45 Cal.3d at page 504, a case which FFA extensively relies upon for its contention that general plans may not be amended by local initiative. (See also *Midway Orchards* v. *County of Butte* (1990) 220 Cal.App.3d 765 [269 Cal.Rptr. 796]; *L.I.F.E. Committee* v. *City of Lodi* (1989) 213 Cal.App.3d 1139, 1143 [262 Cal.Rptr. 166] [dicta].)[4]

We recognize the Supreme Court recently observed: "This court has never considered whether a general plan may be adopted or amended by initiative." (*Lesher Communications, Inc.* v. *City of Walnut Creek*, *supra*, 52 Cal.3d 531, 539; see also *id.* at p. 540, fn. 8.) This mere comment that no Supreme Court case has previously considered the specific issue hardly repudiates deductions which may be drawn from *Yost, supra,* 36 Cal.3d 561 and prior Court of Appeal opinions. Relying on the substantial case authority allowing general plans to be amended by ballot measures, a trial court can reasonably conclude that an initiative that proposes to amend a general plan is not clearly an invalid use of the electoral process. Thus here, the trial court did not err in finding that the Board failed to make a "compelling showing" that the initiative in question was beyond the scope of the initiative process.

FFA and the Board next contend the initiative was invalid because general plans must be adopted by "resolution," whereas the power of initiative under Elections Code section 3711 only extends to "ordinances."[5] Once again, we cannot say that the current state of the law on this subject supports a

---

[3]The initiative power springs from the electorate's retained power of initiative and referendum. (See Cal. Const., art. II, § 11.) There is no textual basis for construing the power of referendum as broader than the initiative power, or vice versa.

[4]We deny SAFE's request for judicial notice filed September 15, 1992, pertaining to various proposed exhibits not before the trial court.

[5]Elections Code section 3711 provides: "If the initiative petition is signed by voters not less in number than 10 percent of the entire vote cast in the county for all candidates for Governor at the last gubernatorial election preceding the publication of the notice of intention to circulate an initiative petition, and the ordinance petitioned for is not required to be, or for any reason is not, submitted to the voters at a special election, and is not passed without change by the board of supervisors, the ordinance, without alteration, shall be submitted by the board to the voters at the next statewide election occurring not less than 88 days after the date of the

"compelling showing" that the initiative was invalid on this basis. To the contrary, existing case law establishes that the constitutional right to act by voter referendum or initiative is self-executing and is not restricted to "ordinances." (*Midway Orchards* v. *County of Butte, supra,* 220 Cal.App.3d 765.)

In addition, the Supreme Court has indicated that Elections Code section 3711 may extend to enactments not denominated "ordinances" in traditional local government law classification. Thus in *American Federation of Labor* v. *Eu, supra,* 36 Cal.3d 687 and in *Lesher Communications, Inc.* v. *City of Walnut Creek, supra,* 52 Cal.3d 531, the court undertook an extensive analysis of what the measure in question would do, not what it was called. Because general plans now set forth positive law that governs land planning decisions in the local community, the plan *functions* like an ordinance, even though for historical reasons arising from the plan's earlier status as "just an interesting study," the plan is enacted by "resolution." (See fn. 2, *ante.*)

FFA and the Board make additional arguments regarding the substance of the initiative, arguing that portions of it conflicted with state law, were internally inconsistent, and were impossible to apply coherently. However, the present question is not whether FFA and the Board are right or wrong about some or all of these issues. The question before us is simply whether the trial court erred in concluding that there had been no compelling showing that the initiative was "clearly invalid." We have reviewed these arguments, and we cannot say the court abused its discretion in finding the initiative was not "clearly invalid," even though parts of the initiative may have been of questionable viability.

In sum, the Board had a duty to place this initiative on the ballot unless it had obtained a court order barring the matter from the ballot. In a preelection challenge of a duly certified ballot initiative, the trial court determines whether the challenger has made a compelling showing that the initiative is clearly invalid. Absent such a showing, detailed consideration of the substance of an initiative—and, indeed, of the whole practice of using initiatives to amend general plans—should await postelection review of an approved initiative. (See *Gayle* v. *Hamm, supra,* 25 Cal.App.3d at p. 258.)

### Attorney Fees

In its August 11, 1992, judgment granting the petition for writ of mandate, the trial court expressly reserved jurisdiction on the issue of attorney fees.

order, or after the board of supervisors is presented with a report prepared pursuant to Section 3705.5."

SAFE requests that we make a "determination that it is entitled to attorneys' fees on this appeal." In its November 24, 1992, letter brief, in arguing that the case should not be deemed moot, the Board urges that the attorney fees issue still requires resolution.

Pursuant to Code of Civil Procedure section 1021.5, the trial court has discretion to award attorney fees within the criteria of that section. (*City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287 [255 Cal.Rptr. 704].) Such an award requires certain factual determinations to be made by the trial court. Here, should the trial court decide to award attorney fees, the award of fees for responding to this appeal naturally follows; we leave the appraisal and fixing of any attorney fees to the trial court. (See *Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75, 82 [146 Cal.Rptr. 57].)

### DISPOSITION

The judgment granting the writ of mandate is affirmed. Respondent SAFE is awarded costs on appeal. Should the trial court determine that SAFE is entitled to attorney fees, it shall determine an appropriate award for services performed on appeal, as well as fees in the trial court. Otherwise, no attorney fees are awarded herein.

Ardaiz, Acting P. J., and Dibiaso, J., concurred.