[Civ. No. 20505. Fourth Dist., Div. Two. Dec. 1, 1981.]

ARNEL DEVELOPMENT COMPANY et al., Plaintiffs and Appellants, v. CITY OF COSTA MESA, Defendant and Respondent.

SOUTH COAST PLAZA, Plaintiff and Appellant, v. CITY OF COSTA MESA, Defendant and Respondent.

## COUNSEL

Rutan & Tucker, Leonard A. Hampel, Robert S. Bower, Latham & Watkins, Robert E. Currie and Robert K. Break for Plaintiffs and Appellants.

Robert M. Myers, Michael E. Wine, John E. McDermott, Richard A. Rothschild, Crystal C. Sims and Jennifer Soloway as Amici Curiae on behalf of Plaintiffs and Appellants.

Thomas C. Wood, City Attorney, Mark J. Huebsch, Assistant City Attorney, Burke, Williams & Sorensen, Richard R. Terzian and Beatrice Joy Braun for Defendant and Respondent.

## OPINION

KAUFMAN, Acting P. J.—Plaintiff Arnel[1] proposed to construct a 50-acre development consisting of 127 single-family residences and 539 apartment units (the Arnel development or the development). Objecting to this proposal, a neighborhood association circulated an initiative to rezone the Arnel property and two adjoining properties to single-family residential use. The voters approved the initiative by a narrow margin. Arnel instituted action No. 287707 in the Orange County Superior Court to invalidate the initiative ordinance. The same day South Coast Plaza, a California partnership, the owner of one of the adjoining properties instituted action No. 287708 for the same purpose. The actions were consolidated for all purposes in the trial court. Collectively, the plaintiffs in the consolidated cases will be referred to as the plaintiffs.

---

[1]The site of the proposed development is owned by plaintiff Genji Kawamura. Plaintiffs Arnel Development Company (a corporation), A & R (a general partnership), R & A (a limited partnership), Harry Rinker and George Argyros, are lessees associated in the proposed development of the property. We refer to these parties collectively as Arnel.

Following trial to the court, judgment upholding the initiative was rendered. Plaintiffs appealed contending the initiative ordinance was invalid for myriad reasons. We reversed the judgment, holding the rezoning ordinance was essentially adjudicatory rather than legislative in nature and was therefore not subject to the initiative process. Having so concluded, we did not pass upon the plaintiffs' numerous other contentions. The Supreme Court granted a hearing on its own motion and thereafter held the ordinance was legislative in nature and was therefore a proper subject for initiative. (*Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511 [169 Cal.Rptr. 904, 620 P.2d 565].) The cause was then retransferred to this court for disposition in light of the Supreme Court's opinion. (*Id.,* at p. 525.)

On retransfer plaintiffs reassert most of their original contentions. Concluding that the initiative ordinance is invalid because it constitutes arbitrary and discriminatory rezoning in excess of the city's police power, we again reverse the judgment without reaching plaintiffs' other contentions.

The contiguous properties involved comprise some 68 acres located in the City of Costa Mesa (the city) which is a general law city. The Arnel property comprises some 50 acres bounded on the north and west by mostly residential property, on the east by the South Coast Plaza Shopping Center, the largest regional shopping center in the county, and by Bear Street, a major arterial highway, and on the south by the San Diego Freeway (Interstate 405). The South Coast Plaza property consists of some 13 acres and the property referred to by the parties as the Roberts property some 4.6 acres. Under the city's general plan, as amended in 1976, 8.5 acres of the Arnel property were designated as low density residential; the balance of the 68 acres was designated medium density residential. In November 1976 the city approved a specific plan for development of the Arnel property, and pursuant to that plan, rezoned the property PDR-LD (planned development residential-low density) and PDR-MD (planned development residential-medium density). The South Coast Plaza and Roberts properties retained A-1 (general agricultural) zoning.

On July 18, 1977, the city approved a final development plan for the Arnel property and a tentative tract map. In its final form, the Arnel project was to consist of 127 single-family residences on about 23 acres proximate to the existing residential uses and 539 apartment units on the remainder, some 23 net acres. Projected apartment rentals indicated

that the project was intended primarily for moderate-income housing. In the City of Costa Mesa there was a deficiency of 6,000 units of low and moderate income housing.

Shortly after the city's approval of the Arnel development, the North Costa Mesa Homeowners Association (the Association) circulated an initiative petition to rezone the Arnel, South Coast Plaza, and Roberts properties to R-1 (single-family residential) zoning.[2] On November 7, 1977, after submission of the signed initiative petition, the city council resolved to submit the initiative measure to the voters at the regular municipal election on March 7, 1978. At the election, the initiative was adopted by a vote of 4,295 in favor and 3,901 against.[3] Thereafter the city refused to process Arnel's applications for a final tract map and building permits.[4]

*Question: Is the initiative ordinance invalid because it constitutes arbitrary and discriminatory rezoning?*

*Answer: Yes.*

More than 18 months of land use planning and more than 30 public hearings by appropriate public agencies had resulted in a determination in November 1976 that the appropriate zoning for the Arnel property

---

[2]The initiative ordinance reads as follows: "The people of Costa Mesa do ordain that the following described land within the City of Costa Mesa shall be zoned R-1 Single Family Residential District and the use thereof restricted to Single-Family Dwelling Units. All that land located within the area bounded by Bear Street on the East, Sunflower Avenue on the North, South Coast Drive on the South, and Tracts numbered 7557 and 7718 on the West (tracts 7557 and 7718 are commonly known as 'The Greenbrook Tract') together with all that land north of the San Diego Freeway and West of Bear Street included within the Tentative Map of Tract 9936 for Arnel Development Company."

[3]The total number of eligible voters was 36,411.

[4]The parties are apparently in dispute as to whether or not Arnel is entitled to have its final tract map approved and building permits issued by the city. The city asserts that the minimum permissible lot size is now increased so that, while the final tract must be approved, the city is not required to issue building permits. In the briefs originally filed with this court, both the city and Arnel cited and relied to some extent upon the decision in *Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal.Rptr. 242, 586 P.2d 556], decided after the trial in these consolidated actions. We do not pass upon these questions because the findings of the trial court do not establish the factual matrix requisite to appellate review. Although there was included in the prayer of Arnel's complaint the request that the city be mandated to process and approve the final tract map and issue building permits, the trial court apparently did not determine these matters because of its conclusion the initiative ordinance was valid.

consistent with the city's general plan was PDR-MD and PDR-LD, and that zoning was established by a duly enacted ordinance after approval of a specific plan. The initiative ordinance rezoning the property was adopted 16 months later without evidence of any significant change in conditions or circumstances and for the sole and specific purpose of defeating the Arnel development.

The trial court found that the initiative ordinance was adopted without consideration of chapters 3 and 4 of the Government Code relating to local planning and local zoning regulations or of the provisions of the Costa Mesa Municipal Code relating to planning for land use and the enactment and administration of zoning regulations and without any consideration of the elements of the city's general plan.

The court further found that the purpose of the proponents of the initiative ordinance was to rezone the described property to R-1 so as to limit the use of the property to single-family dwellings and thereby to defeat the specific planned development—the Arnel project—and to prevent development of the two adjoining parcels other than for single-family residential purposes; that the primary objective of the proponents of the initiative was to stop the development of apartments in the Arnel project notwithstanding the acute shortage of moderate income housing in the city; that if neither the Arnel project nor any similar project had been approved by the city there would have been no initiative campaign to rezone the property; and that the proponents of the initiative measure selected R-1 as the proposed rezoning classification without consideration of the various zoning alternatives or the best utilization of the property and only because an R-1 zoning classification constituted the fullest possible down zoning.

Defendants contend that the latter findings are not meaningful because the intent and purpose of the proponents are immaterial. They also contend that what was in the minds of the electorate in adopting the initiative is likewise immaterial. We are inclined to agree with these contentions. As to the second, however, we observe that while normally courts do not inquire into legislative motive, legislative purpose is a factor to be considered in determining whether a zoning ordinance is invalid as discriminatory (see discussion and cases cited, *infra*), and the ballot arguments contained in the voters' pamphlet are frequently considered in determining the legislative or statutory purpose. (See, e.g., *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 864-866 [167

Cal.Rptr. 820, 616 P.2d 802], cert. den. (1981) 450 U.S. 918 [67 L.Ed.2d 344, 101 S.Ct. 1362]; *White* v. *Davis* (1975) 13 Cal.3d 757, 774-775, including fn. 11 [120 Cal.Rptr. 94, 533 P.2d 222].) The argument in favor of the initiative ordinance at hand as found in the voters' pamphlet discloses that the initiative was expressly directed at the Arnel development and that its specific purpose was to prevent the Arnel development.[5]

■ The usual test when a zoning ordinance is attacked as being in excess of the police power is whether or not the ordinance bears a substantial and reasonable relationship to the public welfare. (E.g., *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 604-605 [135 Cal.Rptr. 41, 557 P.2d 73, 92 A.L.R.3d 1038]; *G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 994 [91 Cal.Rptr. 227].) However, "[t]he principle limiting judicial inquiry into the legislative body's police power objectives does not bar scrutiny of a quite different issue, that of discrimination against a particular parcel of property. 'A city cannot unfairly discriminate against a particular parcel of land, and the courts may properly inquire as to whether the scheme of classification has been applied fairly and impartially in each instance.' (*Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 338 [175 P.2d 542].)" (*G & D Holland Construction Co.* v. *City of Marysville, supra*, 12 Cal.App.3d at p. 994; see also *Arnel Development Co.* v. *City of Costa Mesa, supra*, 28 Cal.3d at p. 521; *City of Orange* v. *Valenti* (1974) 37 Cal.App.3d 240, 243 [112 Cal.Rptr. 379]; *Sunset View Cemetery Assn.* v. *Kraintz* (1961) 196 Cal.App.2d 115, 122-124 [16 Cal.Rptr. 317], and cases there discussed.)

---

[5]The ballot argument in favor of the initiative ordinance read in pertinent part: "Arnel Development Company has had final approval on a plan which would place over 500 apartments and some single family homes on two of the four parcels in question. Two other commercial developers have long term leases on the remaining two parcels.

". . . . . . . . . . . . . . . . .

"The majority of the deficiencies in the Arnel Development Company project is a direct result of an attempt to overbuild the site. The problem is basically one of density. There are not enough driveways to ease traffic congestion and other problems that may arise. The access to the apartment complex is at a single location so that any unusual traffic accident, major water main break, need for repair of street or utilities within the street, would substantially obstruct emergency access. The apartment complex will cause a substantial increase in vehicle trips per day onto South Coast Drive.

"Proponents of this ordinance feel that a better land use of the area in question would be single family homes rather than apartment or commercial uses. Single family homes would have a greater positive effect upon the fair market value of homes in the immediate area."

■ Having only months earlier duly enacted an ordinance rezoning the property consistent with the general and specific plans for the express purpose of permitting the development, had the city council later attempted, without any significant change in circumstances and without considering appropriate planning criteria, to rezone the property for the sole purpose of defeating the development, the subsequent rezoning ordinance would undoubtedly be held invalid as arbitrary and discriminatory. (See, e.g., *City of Orange* v. *Valenti, supra*, 37 Cal.App.3d at p. 243; *G & D Holland Construction Co.* v. *City of Marysville, supra*, 12 Cal.App.3d at pp. 994-996, and authorities cited; *Sunset View Cemetary Assn.* v. *Kraintz, supra*, 196 Cal.App.2d at pp. 122-124, and cases there discussed.) ■ The city's authority under the police power is no greater than otherwise it would be simply because the subsequent rezoning was accomplished by initiative. (Cf. *Campen* v. *Greiner* (1971) 15 Cal.App.3d 836, 843 [93 Cal.Rptr. 525]; *Mueller* v. *Brown* (1963) 221 Cal.App.2d 319, 324-325 [34 Cal.Rptr. 474].)

■ The rezoning of the South Coast Plaza and Roberts properties was also arbitrary and discriminatory. In addition to the fact that the R-1 zoning classification was selected purely capriciously without consideration of appropriate planning or land use criteria, these properties were included in the initiative ordinance purely because they are adjacent to the Arnel property and for the sole and specific purpose of precluding any future development that would include moderate income apartments.

Finally, the findings of the trial court and the undisputed evidence disclose that the initiative ordinance is not rationally related to the general regional public welfare, but, at best, to conserving the interests of the adjoining property owners and residents of the immediate area.[6]

The trial court made a "finding" that reads in pertinent part: "The Initiative Ordinance reasonably relates to the public welfare of the City of Costa Mesa and of the region affected by the enactment of the ordinance." However, the court also found that the only "interests" affected by the enactment of the ordinance "are the interests of property owners in the area bounded by the San Diego Freeway, Bear Street, Sunflower Avenue and Fairview Road, whose property values may be adversely affected by an apartment project and residents and other persons in said

---

[6]Even as to them there was no finding of necessarily adverse consequences from the development, only that there might be adverse consequences.

area who may be adversely affected by added traffic fumes, congestion, noise and a greater concentration of people within said area that would result from a more intense development of the land than is allowed under R-1 zoning on the one hand, and the interests of the landowners and developers whose economic interests are adversely affected and of moderate income persons who are being deprived of the opportunity to live within the area affected on the other hand."

Manifestly, the development of a 539-unit apartment complex to be occupied by moderate income families in a high demand area with a shortage of low and moderate income housing such as the one here involved is a matter of regional concern. It is common knowledge that in the Costa Mesa-Irvine-Newport Beach-Huntington Beach area business is often done on a regional basis and that insofar as housing is concerned, city limits are of little significance. Persons frequently reside in one city, work in another, recreate primarily in yet another and shop in several.

The shortage in affordable housing has been declared to be a subject of statewide importance. (Health & Saf. Code, § 50001.) The housing element of the city's general plan specifically recognizes the regional character of the metropolitan housing market. In the state Guidelines for the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) a proposed residential development of more than 500 units is deemed to have regional significance. (Cal. Admin. Code, tit. 14, § 15161.6, subd. (b)(2)(A).) Indeed, in one of its findings quoted in part above the court made reference to "the public welfare ... of the region affected by the enactment of the ordinance."

In *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at pp. 607-609, the court dealt with the problem of regional interest. It stated in relevant part: "When we inquire whether an ordinance reasonably relates to the public welfare, inquiry should begin by asking *whose* welfare must the ordinance serve. In past cases, when discussing ordinances without significant effect beyond the municipal boundaries, we have been content to assume that the ordinance need only reasonably relate to the welfare of the enacting municipality and its residents. But municipalities are not isolated islands remote from the needs and problems of the area in which they are located; thus an ordinance, superficially reasonable from the limited viewpoint of the municipality, may be disclosed as unreasonable when viewed from a larger perspective.

"These considerations impel us to the conclusion that the proper constitutional test is one which inquires whether the ordinance reasonably relates to the welfare of those whom it significantly affects. If its impact is limited to the city boundaries, the inquiry may be limited accordingly; if, as alleged here, the ordinance may strongly influence the supply and distribution of housing for an entire metropolitan region, judicial inquiry must consider the welfare of that region. [Fn. omitted.]

". . . . . . . . . . . . . . . .

"We explain the process by which a trial court may determine whether a challenged restriction reasonably relates to the regional welfare. The first step in that analysis is to forecast the probable effect and duration of the restriction. . . .

"The second step is to identify the competing interests affected by the restriction. We touch in this area deep social antagonisms. We allude to the conflict between the environmental protectionists and the egalitarian humanists; a collision between the forces that would save the benefits of nature and those that would preserve the opportunity of people in general to settle. Suburban residents who seek to overcome problems of inadequate schools and public facilities to secure 'the blessing of quiet seclusion and clean air' and to 'make the area a sanctuary for people' (*Village of Belle Terre* v. *Boraas, supra*, 416 U.S. 1, 9 [39 L.Ed.2d 797, 804]) may assert a vital interest in limiting immigration to their community. Outsiders searching for a place to live in the face of a growing shortage of adequate housing, and hoping to share in the perceived benefits of suburban life, may present a countervailing interest opposing barriers to immigration.

"Having identified and weighed the competing interests, the final step is to determine whether the ordinance, in light of its probable impact, represents a reasonable accommodation of the competing interests. [Fn. omitted.] We do not hold that a court in inquiring whether an ordinance reasonably relates to the regional welfare, cannot defer to the judgment of the municipality's legislative body. [Fn. omitted.] But judicial deference is not judicial abdication. The ordinance must have a *real and substantial* relation to the public welfare. (*Miller* v. *Board of Public Works, supra*, 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479].) There must be a reasonable basis in fact, not in fancy, to support the legislative determination. (*Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d

342].) Although in many cases it will be 'fairly debatable' (*Euclid* v. *Ambler Co., supra*, 272 U.S. 365, 388 [71 L.Ed. 303, 311]) that the ordinance reasonably relates to the regional welfare, it cannot be assumed that a land use ordinance can *never* be invalidated as an enactment in excess of the police power." (Italics in the original.)

Rather obviously the trial court's view of what the competing interests were was too narrow. More significantly the initiative ordinance cannot be said to effect a reasonable accommodation of the competing regional interests. Normally that determination would depend upon a number of facts to be determined by the trial court. (See *Associated Home Builders, etc., Inc.* v. *City of Livermore, supra*, 18 Cal.3d at pp. 607-609.) However, in the case at bench the uncontroverted evidence and findings of the court establish that there was not even an attempt to accommodate competing interests on a regional basis, and we have no hesitancy in concluding that the initiative ordinance, which completely precludes development of multiple family residences in the area, does not effect a reasonable accommodation of the competing interests on a regional basis and is therefore not a valid exercise of the police power.

For the foregoing reasons the judgment is reversed with directions to the trial court to include in its final judgment a declaration that the initiative ordinance is invalid. Upon return of the case to the trial court, it shall conduct such further proceedings as may be necessary to dispose of any remaining untried issues such as whether or not Arnel is entitled to have its final tract map approved and building permits issued.

McDaniel, J., and Morris, J., concurred.

A petition for a rehearing was denied December 21, 1981.