[No. A089834. First Dist., Div. One. May 11, 2001.]

JAMES A. MERRITT et al., Plaintiffs and Appellants, v.
CITY OF PLEASANTON, Defendant and Respondent.

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, David P. Lanferman; Morrison & Foerster and Michael H. Zischke for Plaintiffs and Appellants.

Michael H. Roush, City Attorney; Shute, Mihaly & Weiberger, Tamara S. Galanter, Mark I. Weinberger and Joseph E. Jaramillo for Defendant and Respondent.

## OPINION

STEIN, J.—This is an appeal from a judgment entered after the superior court denied a petition for writ of mandate, filed by appellants, by which they sought to compel the City of Pleasanton (the City) to set aside Measure P, a referendum measure defeated at a June 8, 1999 municipal election. We will affirm.

### BACKGROUND

Appellants are the owners and the proposed developer of a 45.75-acre parcel of property (the Property). The Property is unincorporated, but it is adjacent to, and within the "sphere of influence" of, the City, and thus subject to the City's general plan. (Gov. Code, § 65859; *City of Irvine v. Irvine Citizens Against Overdevelopment* (1994) 25 Cal.App.4th 868, 877 [30 Cal.Rptr.2d 797].) The general plan designates the land use for the property as low-density residential. It appears that the City has annexed land on both sides of the Property, which land has been developed as residential subdivisions. The City's general plan states policies of developing "new housing in infill and peripheral areas . . . adjacent to existing residential development," and permitting "residential infill in areas where public facilities are adequate to support such development." The general plan also recognizes that "[t]he annexation of remaining parcels of unincorporated County land to the City is crucial to completing an efficient system of municipal services at General Plan buildout."

Appellants wish to develop the Property. They submitted a proposal for a planned unit development (PUD) that, after various modifications, proposed the construction of 89 single-family homes. In early 1999, the City's planning commission approved appellants' proposal, subject to a number of conditions, including payment of a $1 million "amenity fee." On January 5, 1999, the City adopted Ordinance No. 1769, approving a prezoning of the site to PUD, low-density residential.

The approved prezoning never occurred. Before Ordinance No. 1769 went into effect, some 4,300 residents signed petitions seeking to submit the matter to a referendum process. On March 2, 1999, the city council approved the city clerk's certification of the referendum petitions. A special municipal election was held on June 8, 1999, on what became Measure P. Measure P

asked voters if Ordinance No. 1769 should be adopted. Opponents to the measure cited such things as overcrowded schools, traffic congestion and air pollution, arguing that these problems should be addressed before further development took place, and contending that the $1 million "amenity fee" would not offset the costs that the City would incur should the development go forward. A majority of the voters voted against Measure P, thus voting that the prezoning should not take place.

On June 16, 1999, appellants filed a petition for writ of mandate, arguing that the defeat of Measure P created an inconsistency with the City's general plan by "promulgating an 'unincorporated' zoning designation for the Property inconsistent with general plan objectives, policies, general land uses, and programs." The trial court rejected that argument, concluding, in essence, that the designation of the Property as "unincorporated" is not a land use or zoning designation, and that nothing in the City's general plan required the immediate prezoning of all land, such as the Property, specified for future development under the general plan. The court further pointed out that Measure P does not prevent development of the Property compatible with the City's general plan; its defeat means only that the Property will not be prezoned at this time.

This appeal followed.

## DISCUSSION

■ A city has the power to enact zoning ordinances not only within its boundaries, but within its "sphere of influence," and thus may prezone unincorporated territory adjoining the city for the purpose of determining what zoning will apply should the property be annexed to the city. (Gov. Code, § 65859; *City of Irvine v. Irvine Citizens Against Overdevelopment, supra,* 25 Cal.App.4th at pp. 876-877.)

■ The local electorate's right to initiative and referendum, guaranteed by article II, section 11 of the California Constitution, generally is coextensive with the legislative power of the local governing body. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) Our Supreme Court has held without equivocation that zoning ordinances are legislative acts. (*Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 514 [169 Cal.Rptr. 904, 620 P.2d 565].) It follows that the electorate has referendum power, coextensive with the legislative power of the local governing body, to make zoning decisions by initiative. (*Id.* at pp. 524-525.) Such decisions reasonably include the decision to prezone—or the decision not to prezone.

■ It is, however, settled that any zoning decision—whether made by the local governing body or by the local electorate—must be consistent with the relevant general plan, and if it is not consistent with the general plan, it is invalid when passed. (Gov. Code, § 65860, subd. (a); *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 541 [277 Cal.Rptr. 1, 802 P.2d 317]; *City of Irvine v. Irvine Citizens Against Overdevelopment, supra,* 25 Cal.App.4th at pp. 875-876; *deBottari v. City Council* (1985) 171 Cal.App.3d 1204, 1212-1213 [217 Cal.Rptr. 790].) In addition, a zoning ordinance must bear a substantial and reasonable relationship to the public welfare, and an arbitrary and discriminatory zoning decision is an invalid exercise of the police power. (*Arnel Development Co. v. City of Costa Mesa* (1981) 126 Cal.App.3d 330, 336-337 [178 Cal.Rptr. 723].)

*Consistency with the City's General Plan*

Appellants point out, correctly, that the annexation and development of the Property as PUD, low-density housing, is perfectly consistent with the City's general plan. It does not follow, however, that failing to prezone the Property PUD, low-density residential, creates an inconsistency with the general plan. There is nothing in the general plan—or at least nothing cited to us—that requires the City to take action with respect to the Property at any particular time. That the general plan recognizes a need for additional housing, and that it further recognizes the Property as an appropriate location for additional housing, creates no mandate for immediate prezoning and development.

There is authority for the proposition that when a general plan designates property for a particular usage, and the property is in fact zoned for that usage, the electorate cannot, by referendum, cause the property to be rezoned to an inconsistent usage. (*deBottari v. City Council, supra,* 171 Cal.App.3d 1204; *City of Irvine v. Irvine Citizens Against Overdevelopment, supra,* 25 Cal.App.4th 868.) In these cases, however, the proposed rezoning was inconsistent with the general plan because it changed the zoning from a usage that was consistent with the general plan to one that effectively precluded the usage designated in the general plan. In *City of Irvine,* for example, the city's general plan had been amended to permit development of a parcel of property, known as Northwood 5, to include over 23,000 square feet of general commercial uses and between 1,621 and 2,885 residential dwelling units. Irvine's city council adopted a zoning change that rezoned Northwood 5 from "development reserve," meaning that the land was unsuitable for immediate development, to a zoning category that permitted both commercial and residential usage. A citizens group submitted a referendum petition seeking to repeal the zoning change. The Fourth Appellate District

concluded that the proposed referendum would result in a zoning change that would be inconsistent with the general plan because its result would be to return Northwood 5 to "development reserve," precluding any development.

Similarly, in *deBottari v. City Council, supra,* 171 Cal.App.3d 1204, the Norco City Council amended its general plan to change the land use designation on a particular parcel from residential/agricultural to residential low density. The council then adopted ordinances approving zone changes to bring the parcel into compliance with the amended general plan. A group of residents challenged the council's action, seeking the repeal of the ordinances. The Fourth Appellate District concluded that the proposed referendum was invalid because the repeal of the ordinances would result in the subject property being zoned for low-density residential use when the amended plan called for a higher residential density. (171 Cal.App.3d at p. 1212.)

In the present case, the City's general plan, while recognizing that at some point the property should be developed for low-density residential usage, does not call for its immediate annexation and development. Unlike the properties at issue in *City of Irvine* and *deBottari*, the Property never has been zoned in a manner that permits the usage contemplated by the general plan, and unlike the initiatives in those cases, the defeat of Measure P did not rezone the property to preclude low-density residential housing. The defeat of Measure P simply preserved the status quo. The Property was and is unincorporated territory. There is no authority for the proposition that the consistency doctrine requires the immediate prezoning and annexation of every parcel of land within a city's "sphere of influence," and thus subject to a land use designation under the city's general plan.

Appellants contend that the Property's status as "unincorporated territory," is a zoning designation, like the designation "development reserve," in *City of Irvine*, and that by "restoring" a zoning designation that does not allow for residential development, Measure P—like the proposed zoning ordinance in *City of Irvine*—created an inconsistency with the general plan. Measure P, however, unlike the proposed zoning ordinance in *City of Irvine,* did not restore a previous land use designation; it changed nothing. The Property was unincorporated territory at the time Measure P was submitted to the voters, and after Measure P was defeated, the Property remained unincorporated territory. In addition, "unincorporated," means only that the City has not yet annexed the Property. That Measure P recites that the "zoning for the property is Unincorporated," or that the city's zoning maps show the Property as "unincorporated," is irrelevant. Until the City acquires the property, the City cannot zone it; indeed, the whole purpose of prezoning is to designate the zoning that will occur upon annexation.

As Measure P did nothing more than cause the Property to continue as unincorporated territory, and as the City's general plan does not require annexation and prezoning of unincorporated territory, there is no inconsistency between Measure P and the City's general plan.

*Arbitrary and Capricious*

Appellants, citing *Arnel Development Co. v. City of Costa Mesa, supra,* 126 Cal.App.3d 330, contend that Measure P unfairly discriminated against the Property. *Arnel,* however, is distinguishable. In order partially to alleviate an acute lack of moderate-income housing, the City of Costa Mesa amended its general plan to designate a particular parcel of property primarily as medium density residential. The city then approved a specific plan for the development of the property, and, pursuant to that plan, rezoned the property PDR-LD (planned development residential—low density) and PDR-MD (planned development medium density). The city followed this action by approving a final development plan for the property that included the construction of moderate-income apartment units. A short time later, a homeowners association circulated a petition to rezone the property R-1 (single-family residential). The matter was submitted to the voters, a majority of whom voted in favor of rezoning the property R-1. The Fourth District held that the rezoning was arbitrary and capricious in that its evident purpose was to prevent the proposed construction of apartment units that would reduce the shortage of moderate-income housing, and that nothing to justify a second rezoning had occurred since the property had been rezoned in accordance with the general and specific plans.

In the present case, unlike the situation in *Arnel, supra,* 126 Cal.App.3d 330, the electorate did not change the Property's land use designation to preclude a particular type of needed housing. The defeat of Measure P simply maintained the status quo. In addition, unlike the situation in *Arnel,* the City's general plan was not amended to call for the immediate development of the Property, and there is no specific plan that calls for the development proposed by appellants.

The situation here is analogous to that presented in *Chandis Securities Co. v. City of Dana Point* (1996) 52 Cal.App.4th 475 [60 Cal.Rptr.2d 481] (*Chandis*). In that case, the City of Dana Point proposed to amend its general plan, and to adopt a specific plan to develop an area known as the Headlands. Petitions were filed placing referendums on the ballot to require voter approval of the general plan amendment and the adoption of the specific plan. The voters rejected both, thus preventing the enactment of

the proposed specific plan and the amendment of the general plan. The plaintiffs, owners of the Headlands, pointed out that the proposed specific plan and the proposed general plan amendment complied with the city's general plan, arguing that the voters' rejection of them was unreasonable. The Fourth Appellate District held: "We disagree with this assertion. Simply because the city council acted reasonably in approving the proposed development plan does not invalidate the electorate's subsequent rejection of the referendums. The applicability of the power of referendum to the adoption of a specific plan implies the electorate may reject the proposed plan. A rule declaring the voters cannot reject a proposed specific plan falling within the parameters of the city's general plan would render the exercise of the power of referendum meaningless." (*Id.* at pp. 481-482.)

The plaintiffs in *Chandis*, like appellants here, cited *Arnel Development Co. v. City of Costa Mesa, supra,* 126 Cal.App.3d 330. The Fourth Appellate District held: "In *Arnel,* the court invalidated a homeowner group's initiative measure which had rezoned the plaintiffs' adjacent property for only single family residences to prohibit plaintiffs from building moderate income apartments on the land. At the time, the city had a shortage of low- and moderate-income housing and there had been no significant change of conditions between the city's original approval of the owner's project and the initiative. [¶] This case involves referendums for the approval of a specific plan and a general plan amendment. Since timely petitions were filed to present the matters to the voters, the city council's initial approval of the plan and amendment never became effective. (Elec. Code, § 9241.) The subsequent rejection by the voters simply maintained the status quo; it did not repeal a specific plan previously adopted by the city council. The current general plan contemplates development of the Headlands and the electorate's failure to approve the plaintiffs' proposed specific plan did not alter this fact. This case does not involve a dispute between adjacent property owners or an attempt to alleviate a low or moderate income housing shortage . . . ." (*Chandis, supra,* 52 Cal.App.4th at pp. 482-483.)

In the present case, as in *Chandis*, the proposal—here the prezoning and annexation of the Property—did not take place before the defeat of Measure P. *Arnel* recognized that an unjustified change in zoning might be arbitrary and capricious. In the present case, however, as in *Chandis*, there was no change in zoning. In addition, although there is no doubt but that the City will at some point wish to increase its housing stock, there is no evidence that the City has an acute shortage of low-density housing and there is no evidence that the electorate voted against Measure P to prevent additional low-density housing in the area. The ballot arguments indicate, rather, that

the voters sought only to postpone further development until there was sufficient infrastructure to support it.

*Validity of Exercise of Referendum Power*

Appellants, in their reply brief below, asserted that in approving Ordinance No. 1769, the city council engaged in an "adjudicatory implementation" of the general plan's policies, concluding that "[a]ny referendum for the PUD zoning designation would therefore be flawed. [Citations.] There is no rational basis for removing the only zoning that achieves general plan goals." On appeal, appellants characterize this argument as an assertion that Ordinance No. 1769 was not subject to the referendum process because it was adjudicatory rather than legislative, and complain that the trial court did not address this argument.

 As noted above, our Supreme Court has held, without equivocation, that zoning ordinances are legislative acts. (*Arnel Development Co. v. City of Costa Mesa, supra,* 28 Cal.3d 511, 514.) The Court of Appeal had concluded that the rezoning at issue in *Arnel* was in fact essentially adjudicatory in nature and therefore could not be approved by initiative. The Supreme Court reversed, pointing out that "[n]umerous California cases have settled that the enactment of a measure which zones or rezones property is a legislative act" (*id.* at p. 516), and that it would create unnecessary and undue problems if the courts were to abandon this precedent and attempt to devise a new test to distinguish between legislative and adjudicative decisions. (*Id.* at pp. 522-523.) "In summary, past California land-use cases have established generic classifications, viewing zoning ordinances as legislative and other decisions, such as variances and subdivision map approvals, as adjudicative. This method of classifying land-use decisions enjoys the obvious advantage of economy; the municipality, the proponents of a proposed measure, and the opponents of the measure can readily determine if notice, hearings, and findings are required, what form of judicial review is appropriate, and whether the measure can be enacted by initiative or overturned by referendum. [¶] To depart from past precedent and embark upon a case by case determination, on the other hand would incur substantial administrative cost. Such a rule would expose the municipality to the uncertainty of whether a proposed measure would be held to be legislative or adjudicative: it would entail cost to the litigants, and it would burden the courts with the resolution of these issues." (*Id.* at p. 523.)

 Appellants contend that the holding in *Arnel, supra,* 28 Cal.3d 511, is no longer viable because it is now recognized that a city's general plan controls land use policy. In appellant's view, because any zoning decision

must be consistent with the general plan, a zoning decision necessarily is adjudicative rather than legislative. Appellants also contend that the focus of Measure P was not on the "zoning" issues, but on the particular development proposed by appellants, and that the decision to approve or reject a particular development is an exercise of adjudicatory, rather than legislative, powers.

We would decline to depart from the holding in *Arnel* even if we had the power to do so. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) It is not at all certain that any and all zoning decisions should be deemed adjudicative simply because they implement policies set forth in a general plan, and any other conclusion would lead to all the problems recognized by the Supreme Court in *Arnel*. In the present case, for example, the decision was not simply whether to zone or prezone the Property, but whether to annex it to the City and whether to develop it at this time. In addition, appellants' belated reference in the trial court to "adjudicatory implementation" precluded the City from introducing evidence below to show that Ordinance No. 1769, and Measure P, in fact were an exercise of legislative discretion. Under the circumstances, there is no justification for breaking with established precedent.

### CONCLUSION

The judgment is affirmed.

Strankman, P. J., and Marchiano, J., concurred.