Filed 2/21/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAVE LAFAYETTE et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF LAFAYETTE et al.,<br><br>  Defendants and Respondents. | A149342<br><br>(Contra Costa County<br>Super. Ct. No. MSN16-0390) |

**I.**

**INTRODUCTION**

Appellants Save Lafayette and Michael Griffiths appeal the trial court's denial of their petition for a peremptory writ of mandate requiring respondent City of Lafayette (the City) to submit appellants' referendum to a public vote. The City amended its general plan to allow for a residential development in an area formerly designated as administrative and office space. After the time to challenge the general plan amendment had passed, the City enacted a zoning ordinance to rezone the property to single-family residential. Appellants collected signatures and properly filed a referendum to place the zoning ordinance on the ballot. The City refused to place the referendum before the voters because it believed if the referendum were successful it would be invalid since it would resurrect the former zoning ordinance that was inconsistent with the amended general plan. The trial court agreed and denied appellants' petition.

We reverse the trial court and conclude that the referendum was not invalid and the issue must be placed on the ballot for a vote by the citizens of Lafayette. We further remand for the trial court to consider appellants' request for attorney fees under Code of Civil Procedure section 1021.5.

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises over a 22-acre area of land in Lafayette known as Parcel 27 located on Deer Hill Road. In 2014, a developer proposed a residential development for Parcel 27 known as "Homes at Deer Hill." The new development included approximately 44 single family homes, with 7.9 acres reserved for public parkland, as well as a bike path and dog park. In June 2015, the City's planning commission recommended city council approval of a general plan amendment that rezoned Parcel 27.

On August 10, 2015, the city council passed and adopted Resolution No. 2015-50 amending the general plan designation of Parcel 27 from "Administrative Professional Office" (APO) to "Low Density Single Family Residential," also known as "Single Family Residential District -20," or R-20. The replaced APO designation allowed for up to 35 dwelling units per acre. The new R-20 designation allows two dwelling units per acre. The city council resolution states: "[T]he General Plan Amendment is consistent with the other elements of the General Plan because the reduction in density better protects the character of the residential neighborhoods and more closely mirrors the pattern of development of residential neighborhoods north of Highway 24." The resolution further finds that the amendment creates a significant public benefit by creating new parkland, a dog park, and a new sports field. It stated the resolution will become effective 30 days after its adoption.

After the general plan amendment became effective and could no longer be challenged, on September 14, 2015, the council approved Ordinance No. 641 changing the zoning designation of Parcel 27 from APO to R-20.

On October 14, 2015, appellants filed a referendum challenging the approval of the zoning ordinance. The referendum stated: "We, the undersigned, representing 10% or more of the registered, qualified voters of the City of Lafayette hereby present this petition protesting the adoption by the City Council of the City of Lafayette of Ordinance No. 641." It requested that the ordinance be repealed or alternatively submitted to a vote. The referendum petition was timely submitted and contained the requisite number of

signatures to be placed on the ballot.  The city clerk notified appellants that the referendum met the statutory requirements of the Elections Code.

On December 14, 2015, the city attorney prepared a staff report.  The report noted that ordinarily once a referendum petition is certified, the ordinance is suspended and the city council must reconsider the ordinance.  Ordinance No. 641 had amended the zoning to be consistent with the City's newly amended general plan.  But, the report advised the city council that under Elections Code section 9241, it was not required to repeal Ordinance No. 641 or to submit the referendum to the voters *if* the referendum were invalid.  Citing *deBottari v. City Council* (1985) 171 Cal.App.3d 1204 (*deBottari*), the report advised that "a referendum seeking to repeal a zoning amendment which would result in a zoning ordinance that is inconsistent with a general plan is a legally invalid referendum."

In response to this staff report, on that same date the city council voted to refuse to repeal the ordinance or to place the issue on the ballot. The city council stated that repeal of the ordinance would result in reversion to APO zoning and create an inconsistency between the zoning ordinance and the City's general plan.[1]

On March 17, 2016, appellants filed a first amended petition for peremptory writ of mandate.  The trial court denied the petition.  The court stated that the City had a duty to place the certified referendum on the ballot but its refusal, even if improper, may be validated by a judicial declaration that the referendum was invalid.  The City must therefore make a "compelling showing" that the referendum is "clearly invalid."

The City argued the referendum would return Parcel 27 to APO zoning and create an inconsistency with the general plan.  Under the City's municipal code, APO zoning is designed for administrative and professional offices, not single family dwellings.  (See Lafayette Mun. Code, § 6-1002.)  Appellants argued the existing zoning was not necessarily inconsistent because APO zoning would allow for single family dwellings.

---

[1] We grant appellants' request we take judicial notice of the public records for the City of Lafayette relevant to the issues on appeal (including the local ordinances and legislative enactments.)

3

Under Lafayette Municipal Code section 6-1004, subdivision (g), "any permitted uses on a site smaller than two hectares (4.94) acres in size" was permitted in an APO-zoned area with the issuance of a land use permit. The court concluded that sections 6-1004, subdivision (g) and 6-1005 evidence a "clear intent by the City to regulate sites smaller than two hectares in size by land use permit." The court concluded that appellants' interpretation that APO zoning allows for single family dwellings "strain[s] established principles of statutory construction." The court noted it must, "wherever possible, construe an initiative measure to ensure its validity." But here, "the City met its burden and made a compelling showing that the referendum, if passed, will create an inconsistency between the . . . general plan land use designation, including its' objectives and policies, and APO zoning."

### III.

### DISCUSSION

#### A. The City Improperly Interfered with the Referendum Process

##### 1. Referendum Process and Judicial Review

The "local electorate's right to initiative and referendum is guaranteed by the California Constitution, article II, section 11, and is generally co-extensive with the legislative power of the local governing body." (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775, fn. omitted.) Under Elections Code section 9237, if a petition protesting the adoption of an ordinance is signed by more than 10 percent of the voters of the city, "the effective date of the ordinance shall be suspended and the legislative body shall reconsider the ordinance." If the legislative body does not repeal the ordinance, then it "shall submit the ordinance to the voters" and "[t]he ordinance shall not become effective until a majority of the voters voting on the ordinance vote in favor of it." (Elec. Code, § 9241.) Local governments are not empowered to exercise discretion in determining whether a duly certified referendum is placed on the ballot. (*Save Stanislaus Area Farm Economy v. Board of Supervisors* (1993) 13 Cal.App.4th 141, 148 (*Save Stanislaus*); *Farley v. Healey* (1967) 67 Cal.2d 325, 327 (*Farley*).) If the local government believes an initiative or referendum is unlawful and should not be presented

4

to voters, it should file a petition for a writ of mandate seeking to remove it from the ballot. (*Save Stanislaus*, at p. 149.)

The trial court may conduct a pre-election review of an initiative, but the standard is one of great deference where "a court will remove an initiative from the ballot only 'on a compelling showing that a proper case has been established for interfering.' " (*Save Stanislaus*, *supra*, 13 Cal.App.4th at p. 150, quoting *Farley*, *supra*, 67 Cal.2d at p. 327.) If a city refuses to place a referendum on the ballot, "this refusal—improper as it is—may be retroactively validated by a judicial declaration that the measure should not be submitted to the voters." (*Save Stanislaus*, at p. 149.)

### 2. *The Referendum Here Would Preserve the Status Quo*

The City argues this case is governed by *deBottari*, whereas appellants argue it is governed by the recent decision in *City of Morgan Hill v. Bushey* (2017) 12 Cal.App.5th 34, review granted Aug. 23, 2017, S243042 (*Bushey*). Both cases present similar factual scenarios to the case before us, but reach conflicting results.[2]

In the 1985 decision of *deBottari*, the Norco City Council refused to submit a properly certified referendum petition to the voters because it sought to repeal ordinances that would result in a legally invalid zoning scheme. (171 Cal.App.3d at p. 1207.) A developer had applied for a general plan amendment and zoning change from residential/agricultural to residential low density. (*Ibid.*) The city council approved the general plan amendment and then two weeks later, approved the zoning change. (*Id.* at p. 1208.) The plaintiff submitted a referendum petition to repeal the zoning ordinances. The city council refused to submit the referendum to the voters because repeal of the ordinances would result in the property being zoned inconsistently with the newly amended general plan. (*Ibid.*)

The Fourth District held that the city council had a mandatory duty to submit initiatives or referendums to the voters, unless it could make a compelling showing for judicial interference. (*deBottari*, *supra*, 171 Cal.App.3d at p. 1210.) " '[E]ven if a

---

[2] At the time of the trial court's decision, *Bushey* had not yet been decided.

5

proposed measure is within the scope of the initiative power, courts retain equitable discretion to examine the measure before the election upon a compelling showing that the substantive provisions of the initiative are clearly invalid.  [Citations].' " (*Ibid.*)

The city's general plan embodies " 'fundamental land use decisions that guide the future growth and development of cities and counties.' " (*deBottari*, *supra*, 171 Cal.App.3d at p. 1211, quoting *City of Santa Ana v. City of Garden Grove* (1979) 100 Cal.App.3d 521, 532.)  "State law prohibits enactment of a zoning ordinance that is not consistent with the general plan.  (Gov. Code, § 65860.)  Were the voters to repeal the zoning amendment at issue here, the result unquestionably would be a zoning ordinance inconsistent with the amended general plan." (*deBottari*, at p. 1210.)  A zoning ordinance that is inconsistent with the general plan at the time it is enacted is invalid.  (*Id.* at p. 1212.)

The plaintiff argued that under Government Code section 65860, subdivision (c),[3] the council had a "reasonable time" to bring an inconsistent zoning ordinance into conformity with an amended general plan.  (*deBottari*, *supra*, 171 Cal.App.3d at p. 1212.) The court concluded it "would clearly distort the purpose of that provision were we to construe it as affirmatively sanctioning the enactment of an inconsistent zoning ordinance." (*Ibid.*)  The court further stated:  "An even greater distortion of legislation would result were we to approve the referendum on the ground that the council could subsequently amend the general plan to conform with the zoning approved by the voters. As is often noted, the general plan serves as the 'constitution for all future developments within the City.' " (*Ibid.*, quoting *O'Loane v. O'Rourke* (1965) 231 Cal.App.2d 774, 782, italics omitted.)

Because, if passed, the referendum would enact an invalid zoning ordinance that was inconsistent with the general plan, "[j]udicial deference to the electoral process does

---

[3] Government Code, section 65860, subdivision (c) provides that if "a zoning ordinance becomes inconsistent with a general plan by reason of amendment to the plan . . . the zoning ordinance shall be amended within a reasonable time so that it is consistent with the general plan as amended."

6

not compel judicial apathy towards patently invalid legislative acts." (*deBottari*, *supra*, 171 Cal.App.3d at p. 1213.)

The Sixth District recently reached the opposite conclusion in *Bushey*. In *Bushey*, the city amended its general plan to change the land use designation for a parcel of property owned by River Park from industrial to commercial. (*Bushey*, *supra*, 12 Cal.App.5th at p. 38.) A few months later, the city council approved an ordinance to change the parcel's zoning from "ML-Light Industrial" to "CG-General Commercial." (*Ibid*.) The general commercial zoning would permit a hotel to be built on the property. (*Ibid*.) The Morgan Hill Hotel Coalition submitted a timely referendum challenging the ordinance zoning change and seeking to prevent a hotel from being built on the property. (*Ibid*.) The city refused to put the referendum on the ballot because it believed it would enact zoning inconsistent with the newly amended general plan. (*Ibid*.)

" 'A zoning ordinance that conflicts with a general plan is invalid at the time it is passed.' " (*Bushey, supra*, 12 Cal.App.5th at p. 40, quoting *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 544 (*Lesher*).) "In the event that a zoning ordinance becomes inconsistent with a general plan by reason of amendment to the plan, or to any element of the plan, the zoning ordinance shall be amended within a reasonable time so that it is consistent with the general plan as amended." (Gov. Code, § 65860, subd. (c).) " 'The obvious purpose of [Government Code section 65860,] subdivision (c) is to ensure an orderly process of bringing the regulatory law into conformity with a new or amended general plan. . . .' " (*Bushey*, at p. 40, quoting *Lesher*, at p. 546.)

The city argued the voters could not use a referendum to reject the zoning ordinance, "because [the] City's discretion with respect to the zoning of the parcel was preempted by [Government Code] section 65860's mandate that the parcel's zoning be consistent with [the] City's general plan." (*Bushey*, *supra*, 12 Cal.App.5th at p. 40.) The court rejected this argument noting that Government Code section 65860 preempted the city from enacting new zoning that was inconsistent with the general plan, but it did not preclude the city from exercising its discretion when choosing among several possible zoning options. (*Id*. at pp. 40–41)

7

The *Bushey* court also distinguished between use of an initiative and a referendum.[4] The voters may not utilize the initiative power to enact zoning inconsistent with a general plan because Government Code section 65860 preludes enactment of zoning that is inconsistent with a general plan. However, the use of a referendum "to reject or approve [the] City's attempt to select a consistent zoning for the parcel simply continued that permitted maintenance of inconsistent zoning. The referendum does not seek to enact anything." (*Bushey*, *supra*, 12 Cal.App.5th at p. 41, italics omitted; *Lesher*, *supra*, 52 Cal.3d at p. 541.)

In reaching this result, the *Bushey* court specifically disagreed with the holding in *deBottari*: "We disagree with *deBottari* and hold that a referendum petition challenging an ordinance that attempts to make the zoning for a parcel consistent with the parcel's general plan land use designation is not invalid if the legislative body remains free to select another consistent zoning for the parcel should the referendum result in the rejection of the legislative body's first choice of consistent zoning." (*Bushey*, *supra*, 12 Cal.App.5th 34 at pp. 37–38.)

The *Bushey* court used this as a basis for concluding that the reasoning in *deBottari* was "flawed." (*Bushey*, *supra*, 12 Cal.App.5th at p. 42.) Unlike an initiative, a referendum does not enact an ordinance. "A referendum that rejects an ordinance simply maintains the status quo. Hence, it cannot violate [Government Code] section 65860, which prohibits the enactment of an inconsistent zoning ordinance. Section 65860 does not automatically render invalid a preexisting zoning ordinance that became inconsistent only after a subsequent general plan amendment." (*Bushey*, at p. 42.) The court concluded the voters validly could utilize the power of referendum to reject the city's method of making the parcel's zoning consistent with the general plan. (*Ibid.*)

---

[4] "The referendum is the power of the electors to approve or reject statutes or parts of statutes . . . ." (Cal. Const., art. II, § 9, subd. (a).) "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." (Cal. Const., art. II, § 8, subd. (a).)

Here, the City's entire argument hinges on *deBottari*. *deBottari* concluded the city could refuse to submit a referendum to the voters because it resulted in the enactment of an invalid zoning ordinance that was inconsistent with the general plan. (*deBottari*, *supra*, 171 Cal.App.3d at p. 1213.) However, as the *Bushey* court noted, a referendum challenging the enactment of a zoning ordinance does not enact anything. (*Bushey*, *supra*, 12 Cal.App.5th at pp. 41–42.) At most, the referendum would *reject* the new ordinance and maintain the status quo. (*Ibid.*)

Similarly, here appellants seek a referendum to vacate an ordinance; not enact one. The referendum requests that the ordinance be repealed or submitted to a popular vote. If the ordinance is submitted to a vote, the voters may vote to have it be enacted, causing no conflict with the general plan. Alternatively, if the voters vote against it and it must be repealed, then the city council could conceivably enact another zoning ordinance in its place that is consistent with the general plan. Appellants suggest the City could select another zoning option such as Low Density Residential (LR-5).

Division One of this court addressed a similar issue in *Merritt v. City of Pleasanton* (2001) 89 Cal.App.4th 1032 (*Merritt*). The Pleasanton General Plan designated the property at issue as low density residential. (*Id.* at p. 1034.) The city adopted an ordinance to approve prezoning of the property to low density residential. (*Ibid*.) Before the ordinance went into effect, residents filed a referendum to allow voters to decide if the ordinance should be adopted. (*Ibid*.) The referendum, Measure P, lost with the majority of voters voting against prezoning to low density residential. (*Id.* at p. 1035.) The developer filed a petition for a writ of mandate, arguing that the defeat of Measure P caused an inconsistency with the general plan. (*Ibid*.)

Division One first noted the fact the general plan designates the property for a particular use does not create a mandate for immediate zoning or development. (*Merritt*, *supra*, 89 Cal.App.4th at p. 1036.) The court distinguished *deBottari* and *City of Irvine v. Irvine Citizens Against Overdevelopment* (1994) 25 Cal.App.4th 868, noting in both cases, "the proposed rezoning was inconsistent with the general plan because it changed the zoning from a usage that was consistent with the general plan to one that effectively

precluded the usage designated in the general plan." (*Merritt*, at p. 1036.) "In the present case, the City's general plan, while recognizing that at some point the property should be developed for low-density residential usage, does not call for its immediate annexation and development. Unlike the properties at issue in *City of Irvine* and *deBottari*, the Property never has been zoned in a manner that permits the usage contemplated by the general plan, and unlike the initiatives in those cases, the defeat of Measure P did not rezone the property to preclude low-density residential housing. The defeat of Measure P simply preserved the status quo." (*Id.* at p. 1037.)

While factually different from this case, *Merritt* supports the reasoning in *Bushey* that putting a referendum on the ballot that may defeat a proposed rezoning preserved the status quo; rather than the reasoning in *deBottari* that it is the referendum that creates an inconsistency.

The City's alternative argument is that *Bushey* misinterpreted Government Code section 65860, subdivision (c). Section 65860, subdivision (c) provides that if "a zoning ordinance becomes inconsistent with a general plan by reason of amendment to the plan . . . the zoning ordinance shall be amended within a reasonable time so that it is consistent with the general plan as amended." (Gov. Code, § 65860, subd. (c).) The City contends this section applies in situations where an amendment to the general plan causes the zoning ordinance to become inconsistent, but does not apply when a referendum creates the inconsistency.

In *Lesher*, our Supreme Court cited *deBottari* for the rule that "[a] zoning ordinance that is inconsistent with the general plan is invalid when passed (*deBottari*[, *supra*,] 171 Cal.App.3d [at p.] 1212; *Sierra Club v. Board of Supervisors* (1981) 126 Cal.App.3d 698, 704) and one that was originally consistent but has become inconsistent must be brought into conformity with the general plan. ([Gov. Code,] § 65860)." (*Lesher*, *supra*, 52 Cal.3d at p. 541.) "The Planning and Zoning Law does not contemplate that general plans will be amended to conform to zoning ordinances. The tail does not wag the dog. The general plan is the charter to which the ordinance must conform." (*Ibid*.) The *Lesher* court held: "The obvious purpose of [section 65860]

10

subdivision (c) is to ensure an orderly process of bringing the regulatory law into conformity with a new or amended general plan, not to permit development that is inconsistent with that plan." (*Lesher*, at p. 546.) The initiative in *Lesher* was invalid because the electorate did not have the power under state law to enact it. Here, Save Lafayette is not seeking to enact an invalid initiative; they are seeking a referendum on the City's changed zoning ordinance.

We agree that if the City amended the general plan to single family residential and appellants sought to place an initiative on the ballot that would enact a zoning ordinance for industrial use, then this would be improper under Government Code section 65860, subdivision (c). But that is not the case before us. The referendum does not seek to enact a new or different zoning ordinance; it simply seeks to put the existing ordinance before the Lafayette voters. If the voters reject it, then the zoning ordinance returns to the status quo, which was inconsistent at the time the city council amended the general plan. The referendum does not create the inconsistency. This result simply stresses the need for a city to amend its general plan and any conflicting zoning ordinance at the same time, in order to avoid the result of creating an inconsistent zoning ordinance. Were it otherwise, the holding in *deBottari* effectively precludes citizens from challenging tardy zoning ordinances by referendum following amendments to general plans.

Appellants argue the kind of situation that has arisen here is the reason that Government Code section 65862 states: "It is the intent of the Legislature, in enacting this section, that local agencies shall, to the extent possible, concurrently process applications for general plan amendments and zoning changes which are needed to permit development so as to expedite processing of such applications."

Each side blames the other for the procedural posture of the referendum. Appellants contend that the city council created the inconsistency by first amending the general plan and then waiting 30 days to adopt the zoning ordinance. They contend the city council should have adopted the general plan amendment and ordinance at the same time (see Gov. Code, § 65862), so the voters could have contested both, but instead they

11

enacted the general plan amendment and waited until it was unreviewable before enacting the zoning ordinance.

The City argues appellants should have contested the general plan amendment within 30 days of its enactment, rather than seeking a referendum on the zoning ordinance. The City, however, cites no legal requirement for the voters to do so.

Additionally, both parties and the trial court spent substantial time on the issue of whether APO zoning would allow for single family residences. Appellants argue the current zoning of Parcel 27 is not inconsistent with the general plan if Ordinance No. 641 is repealed or the voters vote against it. They argue the current zoning of APO would allow for single family residences. The City disagrees. The trial court similarly found the Lafayette Municipal Code could not be read to conclude APO zoning would allow for single family residences. Given our conclusion the City erred in failing to present the referendum to the voters, we need not address this issue. If the voters invalidate the current zoning ordinance, then the City must address whether the existing zoning (APO) allows for the Homes at Deer Hill development, or if there are alternative consistent zoning ordinances that can be adopted.

### 3. *California Cannabis Coalition v. City of Upland*

In their reply brief, appellants place great weight on the Supreme Court's recent decision in *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924 (*Cannabis*). We requested supplemental briefing from the City to address *Cannabis*, which was published after it submitted its brief in this case. The City contends the holding in *Cannabis* is not applicable here. The facts in *Cannabis* involved a voter initiative to permit medical marijuana dispensaries and to require each dispensary to pay an annual $75,000 licensing and inspection fee. (*Id.* at pp. 931-932.) The California Cannabis Coalition collected signatures from 15 percent of the city's voters and requested a special election to consider the initiative pursuant to Elections Code section 9214 (section 9214). (*Ibid.*) The city concluded the $75,000 fee constituted a general tax and could not be voted on in a special election. (*Id.* at p. 932.) The California Cannabis

12

Coalition filed a writ of mandate alleging the city violated section 9214 by failing to hold a special election on the initiative. (*Ibid.*)

While the issue in *Cannabis* was not directly on point with our case—whether the California Constitution restricted the ability of voters to impose taxes via initiative—our Supreme Court did reiterate the importance of the initiative and referendum process. "[W]e have held that the people's power to propose and adopt initiatives is at least as broad as the legislative power wielded by the Legislature and local governments. [Citations.]" (*Cannabis*, *supra*, at p. 935.) The Constitution " 'speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them.' [Citation.] Since then, courts have consistently declared it their duty to ' " 'jealously guard' " ' and liberally construe the right so that it ' " ' be not improperly annulled.' " ' [Citations.]" (*Id.* at p. 934.) "Indeed, we resolve doubts about the scope of the initiative power in its favor whenever possible. [Citation.]" (*Id.* at p. 936.) The ultimate holding of *Cannabis* was the requirement that taxes be voted on in general elections only applies to local governments and not to voter initiatives. (*Id.* at p. 943.) There, the city erred in making a "unilateral determination that the proposed initiative constituted a general tax and was therefore governed by [California Constitution] article XIII C, section 2 did not relieve it of its obligation to adhere to section 9214—particularly given that the initiative purported to propose a 'fee' and was thus, facially at least, not a tax measure." (*Cannabis*, at p. 948.)

Appellants argue that like the city in *Cannabis*, the City here erred in making a unilateral decision that the referendum was invalid and refusing to submit it to the voters. We agree. The City's process of enacting the general plan amendment and then waiting 30 days to enact the zoning ordinance should not prevent the citizens of Lafayette from exercising their rights and voting to reject the rezoning of Parcel 27. The local electorate properly submitted a referendum petition that was certified. The City should have either suspended the ordinance or submitted the issue to the voters. (See Elec. Code, § 9237, former § 9241.) The City did not have the discretion to keep the referendum off the ballot, nor was there a "compelling showing" justifying its action. If the City believed

13

that the referendum was invalid or illegal, the proper course of action was to file a writ of mandate. (*Save Stanislaus*, *supra*, 13 Cal.App.4th at p. 149.)

**B.      Request for Attorney Fees**

In their petition for a writ of mandate, appellants requested the award of reasonable attorney fees pursuant to Code of Civil Procedure section 1021.5. The trial court did not rule on this request presumably because it denied the petition. On appeal, appellants request this court award attorney fees. The City does not address the issue in their brief.

Under Code of Civil Procedure section 1021.5, a court may award attorney fees to a successful party in an action which enforces an important public right affecting the public interest. "An award of attorney fees is proper under [Code of Civil Procedure] section 1021.5 if (1) petitioners' action resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit was conferred on the general public or a large class of persons, and (3) the burden of private enforcement was such as to make the award appropriate." (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1516, citing *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 935.)

Although we recognize that an appellate court may decide the issue of attorney fees under Code of Civil Procedure section 1021.5 in the first instance (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 426), we have a limited record upon which to consider the issue. The parties did not brief it before the trial court and the City does not address it on appeal. Furthermore, the trial court did not rule on it. We therefore remand to trial court to allow the issue to be properly briefed and argued. (*Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 334 ["The award of fees under [Code of Civil Procedure] section 1021.5 is an equitable function, and the trial court must realistically and pragmatically evaluate the impact of the litigation to determine if the statutory requirements have been met."]; *Lindelli v. Town of San Anselmo*, *supra*, 139 Cal.App.4th

14

at p. 1517 [determination of the amount of fees "is a factual issue more properly considered in the first instance by the trial court on remand"].)

## IV.

## DISPOSITION

The judgment is reversed. We remand to the trial court to grant appellants' petition for a writ of mandate and to determine if appellants are entitled to attorney fees under Code of Civil Procedure section 1021.5.

_____

RUVOLO, P. J.

We concur:

_____

REARDON, J.

_____

SCHULMAN, J.[*]

A149342, Save Lafayette v. City of Lafayette

_____

[*] Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. George V. Spanos |
| Counsel for Appellants: | Gary S. Garfinkle, Maria J. Garfinkle |
| Counsel for Respondents: | Best Best & Krieger, Scott W. Ditfurth, Alexandra A. Baca |

A149342, *Save Lafayette v. City of Lafayette*